## SPOKANE MILL CO. *v.* POST *et al.*

*(Circuit Court, D. Idaho. April 9, 1892.)*

1. NAVIGABLE WATERS—OBSTRUCTION—NUISANCE.
   Rivers and streams, when of such size and channel that they may be used for the purpose of floating logs or in the transportation of any article of commerce, are public highways. While any obstructions placed in the same which will prevent such use are a public nuisance, they may be abated upon the action of a private individual who suffers some special damage, not common to the entire community.
2. SAME—PLEADING.
   The party asking such abatement must allege and show that the commerce for which he would utilize the stream is lawful.

*(Syllabus by the Court.)*

In Equity. Bill by the Spokane Mill Company against Frederick Post *et al.* to enjoin the obstruction of a stream, and abate a nuisance. Heard on motion for a temporary injunction and on demurrer to the bill. Injunction refused, and demurrer sustained.

*Edgar Wilson*, for plaintiff.

*Albert Hagan* and *John R. McBride*, for defendants.

BEATTY, District Judge. The complainant alleges that, by obstructions placed in the Spokane River by defendants, it is prevented from floating down the stream a lot of logs it now has just above such obstructions, as well as from so using the river in the future as it has used it in the past, and asks the abatement of the obstructions. Responding to the order to show cause why a temporary mandatory injunction should not issue, the defendants deny the general allegations of the bill and the affidavits of complainant, and also demur to the bill as insufficient to justify the relief sought. The complainant is not asking the relief of a merely temporary restraining order to prevent waste and preserve the property as it now is pending litigation, but the extraordinary writ by

which the *status* shall be changed, the property of defendants destroyed, and an alleged nuisance abated. To justify this proceeding, such an extraordinary state of facts must appear as would demonstrate clearly the existence of most lawless aggression by the defendants, and strong probability of such great and irreparable loss and injury to complainant as could not otherwise be protected. The facts are not fully before me, but, in so far as they are, I am not impressed with the belief that the situation is such as to justify complainant's request. So far as can be observed, it. cannot be necessary at any time to remove from said river all the weirs, dams, and obstructions asked by the complainant, but it seems to me some change in the construction of the boom may be made, which will permit the use of the stream by all. It is quite probable such change will not leave the river as free as it was by nature, and may work some inconvenience to all using it; but the water, as well as the light and the air and the rest of Nature's bequests, are not for the sole benefit and use of any single individual, corporation, or interest, but for all, as far as they can be usefully appropriated. I am not prepared, from the facts now before me, to say what change should be made it such boom, even if I were convinced complainant is likely to suffer the injury above referred to; but the facts do not show it will be without a remedy for any immediate loss suffered. Any order, therefore, to now remove the obstructions complained of, or any of them, must be and is refused.

But there is another reason why this order will not now be made. It is not shown that complainant is lawfully removing the logs from Idaho. It may be said that it does not appear from the allegations that complainant is engaged in a contraband trade, and that the court is justified until the contrary is shown in regarding the business as lawful. It does, however, appear from the evidence that the United States marshal, an officer of this court, in his efforts to protect the government and prevent the unlawful exportation of its timber from this state, has been somewhat instrumental in the maintenance of the boom and obstructions complained of; and the court cannot avoid the knowledge that gross depredations have recently been made upon the public timber lands in the portion of the state referred to in the pleadings. There is sufficient, at least, to put the court on its guard, and for it to require, before acting, such positive information of the facts that it will not inadvertently protect an unlawful business. This is not indulging in any presumption that the complainant is guilty of any violation of law, but, as the granting of the unusual relief asked is a matter somewhat within the discretion of the court, it should be exercised adversely to the complainant until it shall clearly appear that the law is not being violated. Moreover, any one asking this extraordinary relief should first establish beyond question that he is entitled to it, that no fault lies with him, that his hands are clean; and this, too, by direct, and not by inferential, averments. It is very certain that if, in this case, it positively appeared the logs in question were unlawfully cut from the public lands of the gov-

ernment, the complainant's request would, without hesitation, be refused. The contrary, I think, should be manifest by allegations and proof. In this respect the bill is subject to the objection taken.

As the temporary injunction is refused, and the bill should be amended, at least in the particular referred to, I might stop here; but other questions having been raised, a brief notice of them may be taken.

The defendants ask the dismissal of the bill, also, because the complainant may have relief at law. The statute upon this subject is section 723, taken from the act of 1789, by which it is provided that a suit cannot be sustained in equity "in any case where a plain, adequate, and complete remedy may be had at law." The supreme court has said, speaking through Mr. Justice FIELD, in *Whitehead* v. *Shattuck*, 138 U. S. 151, 11 Sup. Ct. Rep. 276, "it would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what would be deemed a suit in equity, as distinguished from an action at law;" to which may be added that this difficulty is not lessened by the various decisions upon this vexing question. The statute is that the remedy by law must be, not only plain and adequate, but it must be complete; otherwise, equity may be invoked. Could the complainant obtain at law all it asks in this action? If so, to that forum must it be remitted. If the only relief sought were for the damage resulting from the detention of a certain lot of logs referred to, law would afford what would be held a complete remedy; but the complainant asks further relief. It alleges it has long been accustomed to use this river as a highway for the transportation of logs to its mill, and that it desires and intends to continue such use in the future, and that defendants are now resisting and obstructing the claim of complainant, and intend and threaten to so continue. If the complainant has the right to so use the river, then it is a continuing right. The interference therewith may be of daily occurrence, and would, in law, lead to a multiplicity of suits,—to constant annoyance. As said in the *Wheeling Bridge Case*, 13 How. 562:

"This injury is of a character for which an action at law could afford no adequate redress. It is of daily occurrence, and would require numerous, if not daily, prosecutions for the wrong done; and from the nature of that wrong the compensation could not be measured or ascertained with any degree of precision."

While complainant may at law obtain relief, at least in part, for the damage it suffers by defendants' acts, it cannot obtain all it asks and is entitled to, if it has the right claimed to the use of that stream. It can by law, in theory at least, obtain damage for its present actual loss, but cannot be awarded future protection. Its remedy, therefore, in that forum is not complete, and only in this can it be.

It is further urged that complainant should at least first have its asserted right to such use of the river determined at law. This rule is not imperative upon application for an interlocutory injunction. Moreover, it is a familiar principle that, when a court of equity is entitled to and assumes the jurisdiction of a cause, it determines it fully in all re-

spects. This familiar doctrine is reaffirmed in *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495. It was urged in that case, against the jurisdiction of the court, that the title of the property had not been judicially determined, to which the court said:

"It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

A different principle is not asserted in 138 U. S., 11 Sup. Ct. Rep., *supra.* While by that action the complainant asked the removal of a cloud from his title, it appeared the defendant was in the actual possession of the property in controversy, and that what complainant sought was possession of his property, and the affirmance of his title thereto. The court held that as, by ejectment, he could both recover the possession and determine the title, he had a complete remedy at law. Had there been some equitable relief asked, and justified by the facts stated, doubtless the cause would have been retained in the equity forum. The ancient English rule that one must thrice maintain his title by ejectment before entire justice will be awarded him is, fortunately, not the law here. It would appear that if, in any case, all a party asks, and to which, under the allegations, he would be entitled, cannot be granted him by law, it does not afford him a complete remedy, and equity then may. This certainly is the rule when the equitable relief is prayed in good faith, and is not a mere incidental, but an important, issue in the cause.

It is also claimed by defendants that their acts, as complained of, constitute a public nuisance, and cannot be abated by this action through a private person or corporation. The law upon this subject is clearly settled. When the nuisance is a public one, and applies alike to all the individual members of the public, only the public, through its proper agents, can maintain an action for its abatement. An individual may maintain the action when he suffers some special damage. The difficulty more often is to determine when the damage suffered by the individual is special, and such as is not shared in common by all the individuals of the community. In this case, complainant has alleged a special damage in the detention of a certain lot of logs. This was a special damage suffered in this particular instance, in which other members of the community did not share. It is true others would have suffered in the same way, perhaps to a different degree, had they attempted to run logs down the river; but, if what others might suffer under the same circumstances were made the rule, then in no case could it be said individuals ever suffer special damages from a public nuisance. In the *Wheeling Bridge Case, supra,* it was held that the bridge was a public nuisance, and that the state, as an individual, for the protection of its individual interests, and not as a state for the protection of the community, could maintain the action to abate it. There are many cases, and some quite similar to the case at bar, in which an individual has been allowed to bring his action to abate a public nuisance because of some special damage he suffered. I think the facts in this case bring it within that rule.

Whether the Spokane river is either a navigable stream, or such as the law denominates a "public highway," is a controlling factor in this cause. It is unnecessary to discuss the old English rule and definition of a navigable stream. However applicable it may have been to their physical condition, it never has been to ours, nor have we adopted it as law. Most sections of our timbered country are traversed by streams of such size that they may be utilized for the economical and convenient transportation of the timber products. In fact, without them, in a mountainous, undeveloped country, the timber would be practically unavailable and useless. From the earliest settlement of the country, all the streams, where convenient, have been thus used. It is safe to assert that generally, throughout the United States, all streams of sufficient size to be used for trade in the transportation of merchandise or products of any kind are public highways, and free to the equal use of all, and the title of riparian owners to the bed of the stream is subject to such public use. That the stream is not meandered by the government survey is immaterial, for the purchase of its bed does not include its waters or their control.

It is urged that because defendant Post has so long resided upon and improved the stream in question, and now owns the land upon both banks, including the intervening islands, he now has the right to use and control it, practically, as he will, including a right to place such obstructions in the current for his own purposes as will deprive others of any use thereof as a public highway. While great consideration is due the adventurous and enterprising pioneer, such a claim as this should not be conceded to any. The adoption of such a principle would enslave any country to the iron rule of its few discoverers.

The defendants assert that the complainant, a large milling company, is by this action inequitably asking the destruction of their property and business. But grant the defendants what they claim, and the public generally, desiring to use the river, would be subject to their exactions. Every man floating timber down this stream would sell to them at such prices as they might arbitrarily fix, or pay them tribute for the right to pass on to other markets. If such were the law the courts would, with lagging step, so enforce it, but the contrary is too well established to now leave a court in doubt of its way. In so far as the facts are developed, they indicate that Spokane river is of sufficient size and of such a channel as to be held a public highway. If this indication is confirmed by a full production of the facts, its waters must so far flow unfettered that they may be utilized by the public for transportation purposes. I do not, however, imagine this will result in any great damage to any of defendants' works, and at most only to some inconvenience. The weir spoken of, probably, need not be disturbed, but by a change or proper construction of the boom the desired end can be reached. The motion for temporary injunction is refused, the demurrer is sustained, and complainant is permitted to amend its bill, and costs against complainant are allowed.