### BIDWELL et al. v. HUFF et al.

(Circuit Court, S. D. Georgia, W. D. July 7, 1900.)

1. CREDITORS' SUIT—MULTIFARIOUSNESS OF BILL.

A creditors' bill, the general purpose of which is to subject assets of the principal defendants to the valid liens of their creditors, is not multifarious because, as incidental to such relief, it also seeks the cancellation of tax deeds on portions of the property, the equitable apportionment of the taxes for which such sales were made, as between the portions of the property covered by different liens, and to set aside special assessments made by a city for street improvements, alleged to be unconstitutional and void, and to that end joins as defendants the officers of the city and others interested in such tax deeds.

**2. SAME—GROUNDS OF JURISDICTION.**

A creditors' bill may be maintained by a judgment creditor where his remedy at law is ineffectual, or where it is obstructed by an incumbrance or by a fraudulent transfer, and for the purposes of such suit the return of an execution issued on his judgment nulla bona is conclusive that his remedy at law is ineffectual.

**3. EQUITY JURISDICTION—FEDERAL COURTS—SUIT TO ENJOIN—ENFORCEMENT OF TAX.**

Where it appears from a bill filed by a mortgage creditor that the city in which the property is situated has levied a special assessment thereon for street paving, equal to one-fourth the value of the property, under a statute and ordinance which take no account of the question of special benefits, and afford the property owner no opportunity to have the question of benefits or their extent judicially determined, and that the validity of such statute has been upheld by the supreme court of the state; that in fact the improvement did not increase the value of the property, and, if the assessment is enforced, it will deprive the complainant of his security,—the bill shows equities which a federal court will protect by injunction to restrain the enforcement of such assessment, and in such case it is not necessary that the complainant shall pay or tender any part of the assessment.

**4. JURISDICTION OF FEDERAL COURTS—CREDITORS' SUIT—AMOUNT INVOLVED.**

Where one complainant in a creditors' suit in a federal court has recovered a judgment against the defendant exceeding $2,000 in amount, other creditors holding judgments for smaller amounts may unite with him as complainants, or may intervene.

**5. CREDITORS' SUIT—JUDGMENT AS FOUNDATION.**

A judgment in a state court is a good foundation for a creditors' bill in a federal court.

In Equity. On demurrer to bill.

William L. Bidwell, of Connecticut, who sues in his own right, and Franklin E. Woodford, of New York, as executor of Emerson A. Phelps, late of Connecticut, have brought this bill against W. A. Huff, individually and as trustee, against the mayor and council of the city of Macon, and against Edison Huff and A. P. Herrington, all of whom are citizens of this district. The plaintiffs are judgment creditors of W. A. Huff, and they sue for themselves and other creditors who may intervene. The bill alleges that W. A. Huff, for himself and as trustee for his minor children, Mattie J. C. Huff (now Jennings) and Edison Huff, on the 1st day of August, 1893, executed to Emerson A. Phelps a deed, in accordance with the provisions of section 1969 of the Code of Georgia, to secure a debt therein described, by which deed he conveyed certain lots in the city of Macon. These lots are fully described in the deed and in the bill. The deed, in so far as it related to the rights of the cestuis que trustent, was made by authority of the superior court of Bibb county, having jurisdiction to order the same. Emerson A. Phelps having died, the plaintiff Woodford, being appointed executor, brought suit as such against Huff individually, and against his several cestuis que trustent, in the city court of Macon, and on the 11th day of December, 1897, obtained a judgment thereon for $2,400 principal, with interest and costs of suit, which judgment is a general lien on all the property owned at its date by W. A. Huff as an individual, and on all property to which he held title as trustee for his children. In addition to this general lien, the judgment, conforming to the law of the state, constituted a special lien, having the date and dignity of the deed above mentioned, which had been executed on the 1st of August, 1893, on all of the said lots which are therein described. An execution corresponding with said judgment, to enforce this general and this special lien, was issued on the 11th day of December, 1897. It was directed against all the property of W. A. Huff, and W. A. Huff as trustee, and especially against the parcels of land in the city of Macon which had been pledged to secure the debt. Thereafter this execution was placed in the hands of L. B. Herrington, deputy sheriff, with direction to execute the same. This officer, after due

search, made his return of nulla bona on the writ of fieri facias. It is alleged
that this failure of the levying officer to enforce the execution is ascribable to
certain illegal tax sales, and other illegal acts to be hereinafter mentioned.
It is further alleged that on June 1, 1893, W. A. Huff executed and delivered
to William Bidwell a mortgage upon a city lot on the corner of Cherry and
Fourth streets in Macon, fronting 105 feet on Cherry and 210 feet on Fourth.
This was to secure a debt for $1,714.12. This, also, was foreclosed by the
general and special judgment permitted by the Georgia procedure. On this,
also, an execution was issued on the 16th day of November, 1897, to be levied
on all the property of W. A. Huff, and especially on his undivided five-sevenths
interest in the city lot upon which the mortgage had been given. This execu-
tion was placed in the hands of V. A. Menard, deputy sheriff, who likewise
made the return of nulla bona thereon. It is further charged that for several
years (particularly, from a period soon after the loans above mentioned were
made) W. A. Huff, as an individual and as trustee, had failed to pay off the
taxes on this property and on his other property; had permitted fi. fas. to
be issued, and grossly excessive levies to be made thereon, and the property
to go to sale under such levies. This was true, notwithstanding the fact that,
in the obligations made to secure the debts of the complainants, Huff had cov-
enanted that he would pay all taxes as they should fall due on this property.
So far from keeping these covenants, he has, the bill alleges, cast the entire
burden of all his taxes on the particular property conveyed or mortgaged to
complainants. The bill further alleges that, after accumulating some $1,600
of tax judgments against the lot on the corner of Fourth and Cherry streets,
the mayor and council of the city of Macon have recently imposed a paving
tax or assessment on that property for the sum of $2,060.61, and a further
special assessment of $83 for sewer connection, and an additional sum for
curbing, which complainants are not able to state. The burdens from city
taxation and assessments on this property amount in the aggregate to about
$4,000, in addition to the state and county taxes, and, it is alleged, will consume
the value of the property, and destroy the lien held by complainant Bidwell
by virtue of his mortgage, and amounts to a confiscation of the property
pledged to him, for the reasons following: It is alleged that the special as-
sessment for street paving was not only in substantial excess of any special
benefits accruing to the property, but was without any special benefit thereto,
and was in effect a taking, under guise of taxation, of private property for
public use, without compensation. This assessment was made by the city
under a rule which excluded any inquiry as to specific benefits to the property,
and was in fact not based on any inquiry into that question, or upon any
judicial ascertainment that such benefit would or might accrue to said prop-
erty; nor does the statute under which the assessment was made, or the ordi-
nance of the city, furnish to the property holders any process of law by
which the question of the extent of the benefit, if any, to said property could
be raised or judicially investigated. The city has claimed to act by virtue of
an act of the general assembly of the state of Georgia approved December
11, 1896, and especially under the seventh section thereof, which provides
that the mayor and council of the city of Macon shall have power and author-
ity to assess one-third the cost of grading, paving, constructing side drains,
cross drains, crossings, and otherwise improving or repairing the street, on the
real estate abutting on each side of the street improved. The real estate
abutting on each side shall pay two-thirds of the entire cost, and any street-
railway company or other railroad company having tracks running through or
across the streets of said city shall be required to pave or otherwise improve
said street as the mayor and council may prescribe, the width of its track,
and for one foot on each side of every line of track now in use or that may
hereafter be constructed by said company, and, in addition, that the entire cost
of paving and otherwise improving sidewalks, including two-thirds of the
necessary curbing for the same, may be assessed on the real estate abut-
ting on the side of the street on which the sidewalk is so improved, and
that the mayor and council shall have power to prorate the cost on the
real estate according to its frontage on the street or portion of the street so
improved, and that the assessment on each piece of real estate shall be a lien
from the date of the passage of the ordinance providing for the work and

making assessment, and that said lien shall have rank and priority of payment next in point of dignity to the liens in favor of the city of Macon for taxes due said city. It is further alleged that the property owner is given no voice as to whether such improvement shall be made, or as to the kind of improvements or as to the cost thereof, or as to whether he deems the same beneficial to his property, nor do the ordinances of the city afford any such privilege, but, on the contrary, they impose on the property owner one-third of the entire cost of paving the street opposite his property, without any regard to benefit or supposed benefit that might result therefrom. The bill states that, since this property fronts 105 feet on Cherry street and 210 feet on Fourth street, it has a total frontage of 315 feet; that there is no building or other improvement thereon, except a dilapidated negro house, used as a negro boarding house, and which pays but a small rental; that the paving has not made it in any particular more desirable, or increased its rental value, or given it any value which it did not possess before, and yet notwithstanding these facts the assessment for the paving on Fourth street was $1,252.51, and on Cherry street $603.30,—the cost being taxed according to street frontage, and not otherwise. By reference to other vacant properties contiguous or opposite the lot in question, which are vacant and not rentable, or which have sold for less than their original cost, the complainants draw the conclusion that the pavement with Belgian blocks has not benefited the locality in any sense; and this is recognized, the bill states, by the mayor and council of the city of Macon, for before the paving assessment was made the sworn city appraisers, for many years, had assessed the property for $15,000, and since that time the city assessors, acting for and on behalf of the city government, have assessed the property for $10,000. Thus the complainants seek to make it appear that, although there has been no physical change in the property whatever, it has lost $5,000, namely, one-third of its value, since the said paving assessment was made. It is alleged that this reduction by the city to the amount of one-third of the assessed value of this property is no part of any scheme to reduce assessments; for, since it is true that the city is indebted to the limit allowed by the constitution of the state of Georgia, and can only raise its necessary revenues by assessing property to its full value, and even beyond its value, so far from reducing valuations within the past few years, the city tax assessors have generally increased the valuations placed by them on property throughout the city. The bill alleges that the last special assessment of some $2,000 for taxes against said property for said street paving, in addition to the burdens which it already had to bear, has destroyed such value as was left it, and has now rendered the same unmarketable, and amounts in effect to confiscation of the real estate pledged to secure his debt. It is further alleged that: The said W. A. Huff has practically abandoned this property to its burdens, and has made no effort to pay off the load of debt, taxes, and special assessments charged against it. He has taken no step to defend the property against the illegal assessment. He has failed and refused to pay off the taxes annually falling due thereon. He has permitted tax fi. fas. issued against him, not only on this property, but on his other property, both inside and outside the city of Macon, to be levied on this particular lot, and although such levies were grossly excessive, and sales thereunder illegal, he has taken no steps to prevent said sales. The mayor and council now claim a lien on said property for paving assessment, and, unless restrained, will proceed to cause the property to be sold, to the irreparable injury of complainants, and the destruction of the mortgage and lien thereon held by complainant Bidwell. In view of their rights as creditors holding liens, complainants allege that the paving assessments made in the manner described are in violation of their rights under the constitution of the United States, and will have the effect of depriving them of property and property rights without due process of law, contrary to the provisions of the fourteenth amendment thereto; that complainant Bidwell will be deprived of his special lien, and both complainants of the lien of their judgment thereon.

It is, moreover, alleged that on the 24th of May, 1894, the mayor and council caused a city tax fi. fa. against W. A. Huff amounting to $225 to be levied on this particular lot, then assessed at $15,000, which was sold, and they became the purchaser for $230.75; that this levy was grossly excessive; that

the lot was easily capable of division into parcels, any one of which could have been offered for sale without injury to the rest of the property, and would have been safely worth more than the tax, interest thereon, and costs; for these reasons, that the sale was void and passed no title. And complainants pray that the mayor and council shall be compelled to produce their tax deed in court, to be surrendered and canceled. They proffer a willingness for the property to be sold, and out of the proceeds that said tax, and all other taxes which are legal and proper charges on said property, to the extent that the same ought in equity to be apportioned against the same, be paid, and that the overplus may be applied to the debts and liens. The bill, however, points out the fact that, although the city of Macon sold the property at the time and in the manner aforesaid, they have continued to assess it for taxes as the property of W. A. Huff, and have continued to issue fi. fas. against it, and caused assessments and charges to be made thereon, thus recognizing that their title is invalid. The bill further alleges that W. A. Huff is the owner of a large amount of valuable real estate outside of the city of Macon, and that for several years all the taxes assessed by the county of Bibb against him individually and against him as trustee have been levied on the lot in the city on the corner of Fourth and Cherry streets. This is true, notwithstanding the value of the property outside the city considerably exceeds in value the property owned by said defendant inside the corporate limits. The bill charges that this has been part of a scheme and purpose of Huff to cause his whole taxes to be charged against this property, so as to relieve his other property therefrom. This, it is said, is contrary to equity and good conscience, and directly in violation of the contract of Huff that he would pay all taxes, and protect the lien of Bidwell's mortgage against the lien of the taxes. These levies have likewise been grossly excessive, and under such levies the property has been sold and purchased at the sale by the county of Bibb, and thereafter, by the procurement of the said Huff, the said county of Bibb conveyed said land to other parties in complicity with Huff, and on his procurement, for the purpose of placing the same beyond the reach of complainant's lien. Such conveyances are now held by Walter Huff, son of W. A. Huff aforesaid, and A. P. Herrington. These parties are charged to be in complicity with W. A. Huff to hold said liens, as part of a scheme and purpose to hinder, delay, and defraud complainant, and are fraudulent and void against complainants and other creditors of said W. A. Huff. And complainants pray that the court may so declare, and that said sales and the tax title thereunder may be decreed to be surrendered and canceled. Complainants allege they are without remedy, save in a court of equity, by reason of the fact that they cannot redeem the property without paying off taxes which ought, in equity and good conscience, to be chargeable against and collected out of other property of Huff, and that they should not be called upon to assume burdens which in equity and good conscience are not their own. The bill charges: That the land mentioned and described in the deed to secure the debt made by W. A. Huff, individually and as trustee, to Emerson A. Phelps, in his lifetime, and on which complainant Woodford, as executor, holds a special lien, has from time to time been sold at tax sales under tax fi. fas. issued, some of them for city taxes, and some for state and county taxes, against said W. A. Huff, and W. A. Huff trustee, during several years past. That said tax sales were all of them void, by reason of the fact that the levies were grossly excessive, and that the property could have been readily subdivided, and a portion of it sold for a sufficient sum to pay said taxes, and that the sales were illegal and passed no title. The mayor and council of the city of Macon became purchaser at various city tax sales, and now claims to own said land so purchased. The bill prays that said deeds procured and held in this manner shall be likewise produced in court, to be surrendered and canceled. Nevertheless they aver their willingness to do equity, and pray that the court may decree a sale of all the said property by a receiver to be appointed, and that all valid taxes (both city tax and state and county taxes) remaining unpaid, together with lawful interest thereon, shall be paid out of the proceeds of such sale. The same averments are made with regard to different tax sales for state and county taxes where the property was bid in by the county commissioners of Bibb county, and tax deeds made to them, and thereafter that the county com-

missioners, acting for said county, have sold the lands, or most of them, to persons acting in complicity with the said W. A. Huff, with intent to hinder, delay, and defraud complainants, which persons so acting in complicity, when discovered, complainants pray leave to make parties hereto, and by fit and proper words to charge them as defendants to this bill.

The bill points out and describes a large body of lands contiguous to the city of Macon, aggregating 305 acres, which land belongs to W. A. Huff, individually and as trustee, and which has been conveyed to the Scottish-American Mortgage Company, Limited, of Edinburgh, Scotland, to secure a debt of $15,-000, besides interest. Complainants claim that, since this land was pledged to secure a debt, so long as the debt remains open and outstanding the legal title to the property is in the grantee of said conveyance, and the same cannot be levied on under executions at law. But complainants allege that they are entitled to reach the equity of redemption in said land, and can only do so by the aid and interposition of a court of equity. Further, it is stated that W. A. Huff individually is seised and possessed of other property; that by reason of deeds to secure debts on various of said properties, as well as tax deeds and other incumbrances, complainants cannot reach and subject the same to their debts, except through the aid of this court. The bill charges that Huff is insolvent; that the taxes levied under his direction against the property pledged to secure their debts were in large part properly chargeable against all of his other property, and ought, in equity and good conscience, to be apportioned thereon. For this purpose they pray that an accounting may be taken, and that the taxes may be apportioned against the different properties upon which the same are chargeable, and that the assets of the said W. A. Huff may be marshaled and distributed among his different creditors according to their rights and equities, liens and priorities; that, in view of their special liens and general liens, they are entitled to the aid of a court of equity. Since their remedies at law have proved unavailing, they are entitled to the aid of a court of equity to reach, all and severally, the assets of said W. A. Huff; and they pray that this bill may have the effect of a creditors' bill, not only for themselves, but for all the other creditors of said W. A. Huff who may intervene and be made parties thereto, and be chargeable with their portion of the cost of the proceeding. The bill alleges that Mrs. Mattie J. C. Jennings (formerly Mattie J. C. Huff) resides outside of the state of Georgia, but is represented by her trustee. It prays that she may be made a party, if necessary to an adjudication of the matters set up in the bill.

Waiving discovery and answer under oath, the bill prays further: That a writ of injunction may issue, restraining the mayor and council of the city of Macon from executing the levy or seeking to collect the pavement assessment aforesaid charged by them against the aforesaid lot No. 4 in square 24 in the city of Macon, and that said assessment be perpetually enjoined; that said decree may declare that said pavement assessment is void, illegal, and in violation of the rights secured by the constitution of the United States, and to be a taking, under the guise of taxation, of private property for public use without compensation, and is in violation of the fourteenth amendment to the constitution, providing that no state shall deprive any person of property without due process of law; that the several tax deeds executed by the city marshal in the case of city taxes, and by some of the deputy sheriffs of Bibb county in the case of state and county taxes, and the tax sales mentioned in the second and fourth paragraphs of the bill, of any portions of such property, and the sales and levies thereunder, may be decreed to be void, and that the deeds may be decreed to be produced in court and surrendered and canceled; that the liens and burdens of taxes chargeable against W. A. Huff, and W. A. Huff, trustee, or W. A. Huff jointly with other parties, may be apportioned and distributed, according to equity and good conscience, against the property chargeable therewith, and may be redistributed and enforced out of the property, and be collected out of such funds and proceeds of such sales as may be according to equity and good conscience; that the assets of said W. A. Huff individually, and W. A. Huff as trustee, may be marshaled, and that all the different liens, mortgages, and judgments, deeds to secure debts, tax liens, and other liens, equities, and priorities, may be enforced and collected according to equitable principles, so as to charge against each per-

son's property only such burdens as may be properly chargeable against the same; that the court appoint a receiver to take charge of and hold all of the above-described property, as well as any other and all other assets that may belong or be owned or possessed by the said W. A. Huff, and W. A. Huff as trustee; that he may convert said property into money, under the order of the court, and may distribute the proceeds according to the liens and priorities held and enjoyed by complainants and such other creditors as may become parties to the bill, as well as in payment of such taxes as may be chargeable against such property, and that the receiver shall have power to redeem property from tax sales, if according to equity and good conscience; and that the proceeds be distributed as may be ordered and decreed by this court. These are followed by a prayer for general relief, and the usual prayer for subpœnas.

The defendants have demurred,—all of them upon the ground that the bill is multifarious, and the mayor and council of the city of Macon upon the further ground that the plaintiffs have sufficient remedy at law, and because the complainants are not property owners in the city of Macon, and because there is no privity between the city and the complainants, and that complainants were not abutting property owners upon the streets of the city of Macon, and are not proper parties to complain of any defect in an ordinance of the city of Macon or in the manner of its enforcement, and because the bill fails to allege that the defendant is insolvent. By his demurrer, William A. Huff contends that the claims of the complainants should not be joined; that each had a special judgment, which they have not made a proper effort to enforce, and that this must be done before the creditors' bill can be maintained; that there is a complete and adequate remedy at law; and, further, that the assessment for paving made by the city postdates the mortgage of William L. Bidwell, and that the lien of said mortgage is superior to said lien for paving assessment; that the court has no jurisdiction to hear the complainant William L. Bidwell, for the reason that the principal of his claim does not exceed in amount the sum of $2,000; because complainants' bill is without equity; because a creditors' bill is ancillary to a judgment at law, and, because these judgments were obtained in the state court, that they are foreign judgments, and a United States court has no jurisdiction of a creditors' bill founded thereon; that the complainants have no right to have the accumulation of taxes apportioned between parcels of property on which they were chargeable; that there is a misjoinder of parties and subjects-matter; and because the bill fails to show that the defendants are insolvent.

Hall & Wimberly, for complainants.

Alexander Proudfit and Anderson & Grace, for defendant W. A. Huff, individually and as trustee.

Minter Wimberly, City Atty., for mayor and council of city of Macon.

SPEER, District Judge (after stating the case as above). The important grounds of the demurrer are that the bill is multifarious, and that there is a total want of equity to sustain it.

With regard to the first ground, it is conceded by counsel for the defendants that a bill is not multifarious unless the matters involved are so dissimilar that the court will not be justified in permitting them to be litigated in one proceeding. "It is true that no rule can be laid down as to what constitutes multifariousness, as an abstract proposition. Each case must depend on its own circumstances, and the court must exercise a sound discretion." Mitf. Ch. Pl. par. 181, note. "A demurrer of this kind will hold only where the plaintiff claims several matters of different natures, but when one general right is claimed by the bill, though defendants have separate and distinct rights, a demurrer will not hold on this ground." Id. The proper

inquiry here is this: Is there any relief sought by this bill which is broad enough to comprehend the entire subject-matter of the averments, and are the defendants named necessary or proper parties thereto? This inquiry would seem necessarily to include the other question made by the demurrer, namely, is there equity in the bill?

The plaintiffs are judgment creditors. Their claims constitute liens recognized by a court of equity, which entitle them to relief therein, when a court of law does not afford a remedy in all respects as adequate and complete as that afforded by a court of equity. The controlling principle is stated by Mr. Justice Field in Jones v. Green, 1 Wall. 330, 17 L. Ed. 553, as follows:

"A court of equity exercises its jurisdiction in favor of a judgment creditor only when the remedy afforded him at law is ineffectual to reach the property of the debtor, or the enforcement of a legal remedy is obstructed by some incumbrance upon the debtor's property, or some fraudulent transfer of it."

It will be observed, in this authoritative statement of the law, that the jurisdiction in equity to enforce the rights of judgment creditors in such cases may rest upon all or either one of three grounds: Where the remedy at law is ineffectual, where it is obstructed by an incumbrance, or where it is obstructed by a fraudulent transfer. This case is an instance where all three of the grounds thus enumerated by the supreme court are discoverable. That the remedy at law is ineffectual to subject the property of the debtor to the payment of these debts is apparent from the failure or refusal of the levying officer to enforce the execution. This appears by his return of nulla bona. The execution is the concluding and supreme effort of the court at law. In the case of Jones v. Green, 1 Wall. 330, 17 L. Ed. 553, which was a bill filed by judgment creditors to subject property of their debtor held by a third party upon a secret trust for him, to the satisfaction of their judgment, the supreme court, speaking through Mr. Justice Field, used this language:

"The execution shows that the remedy afforded at law has been pursued, and is, of course, the highest evidence of the fact. The return shows whether the remedy has proved effectual or not, and, from the embarrassments which would attend any other rule, the return is held conclusive."

It is, however, said in support of the contention that the bill is without equity, that the complainants could have enforced their judgments; that the value of the property upon which they have special liens is ample to pay off the debts. And it is said that a court of equity will not take charge of the assets of the debtor unless the creditor has first utilized the property pledged for his debt, as far as it will go towards its satisfaction. A sufficient reply to this is also afforded by the return of nulla bona. In Jones v. Green, supra, the supreme court announces that "the court will not entertain inquiries as to the diligence of the officer in endeavoring to find property upon which to levy." It is clear, then, that the remedy which the law affords these creditors has proven ineffectual. It is also true that the bill recites a number of incumbrances, such as tax sales on levies alleged to be grossly excessive, and tax sales and deeds alleged to be fraudulent, which constitute incumbrances upon the debtor's property, and which obstruct the enforcement of legal remedies.

The demurrer admits these averments to be true. It follows that the case complies in every essential with the requirements of a creditors' bill, as these are defined by the supreme court of the United States.

A most important averment in the bill is that there has been a practical confiscation of the property to which plaintiffs' liens attach, under the guise of unconstitutional assessments for paving purposes imposed by the mayor and council of the city of Macon. The city is made a party to the bill, and an injunction prayed against it, not only to enjoin the collection of these paving assessments, but also to have a decree for the cancellation of deeds to the property of the debtor held by it, which deeds, it is alleged, as previously stated, were obtained in such fraudulent manner that a court of equity will declare them as of no effect, and which nevertheless obstruct the remedies at law. It appears from the averments of the bill that the city assessment against lot 4, on the corner of Cherry and Fourth streets, amounts to about one-fourth of the entire value of the property. It further appears that this paving burden was not only in substantial excess of any special benefits accruing therefrom to the property, but was so far without any special benefit thereto that immediately after the assessment, although there has been no change whatever in the physical conditions, the city assessors estimated its value as precisely one-third less than the sum at which it was assessed before the burdens for paving were imposed thereon. This is evident from the fact that the lot was estimated by the assessors as worth $15,000 before the paving assessments were made, and only $10,000 since then. The bill further alleges that neither the statute under which the assessment was made, nor the ordinances of the city, afford to the property holders any process of law by which the question of the extent of benefit, if any, to said property could be raised or judicially investigated. The property holders are simply assessed one-third the cost of grading, paving, constructing side drains, cross drains, crossings, and otherwise improving or repairing the street, on the real estate abutting on each side of the street improved; and these assessments on each side of the street paved are prorated between the property owners according to the frontage of each lot, whether it sustains the humble and profitless tenement of the poor, or structures of imposing and costly character, affording lucrative rentals to the prosperous. The effect of this assessment, if legal, is to create a lien upon the lot in question superior in dignity to the liens of plaintiffs, and therefore, it is insisted, will deprive them of the security for their debts. Moreover, it will be seen upon examination that not only do the statute of the state authorizing the assessment, and the ordinance of the city, afford to the plaintiffs no right to have the constitutional question involved determined, but also that the appellate court of the state of last resort, namely, the supreme court of Georgia, under similar facts, has denied to the citizen judicial relief from municipal exactions of this sort, even where no benefit inured to the property assessed. In the case of Hayden v. City of Atlanta, 70 Ga. 817, that court held that special benefit to the property holder was not regarded as essential to maintain a pavement assessment of this character, and that the

whole question of benefit, whether general or special, is left to the legislative discretion; that the power resides in the state and the legislature to confer upon municipal corporations the right to assess property fronting on the streets; that there is no limit imposed by the constitution of the United States on this power; and that it rested upon the sound discretion of the legislature. This decision was followed and approved in other cases. These cases were decided before the learned and distinguished jurists composing the supreme court of Georgia could have enjoyed the light afforded by the decision of the supreme court of the United States in Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 186, 43 L. Ed. 443, decided in 1898. It is not to be doubted that since the question involves the construction and application of that provision of the fourteenth amendment to the constitution of the United States, which provides, "Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law," and of that provision of the fifth amendment which provides, "nor shall private property be taken for public use without just compensation," and since this paving assessment is made effective by the state, the supreme court of Georgia would now take pleasure in hastening to adopt as its own the decision of the supreme court of the United States prohibiting similar action by the state of Ohio. It is true, however, that the supreme court of the state has not as yet reconsidered its rulings on this important topic, and that we must be controlled by the supreme court of the nation. The rule as established in Norwood v. Baker is perhaps sufficiently stated in the syllabus, as follows:

"The principle underlying special assessments upon private property to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore that the owners do not in fact pay anything in excess of what they receive by reason of such improvements."

And further:

"The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

The court, however, qualifies this principle by the following statement:

"But, unless such excess of cost over special benefit be of a material character, it ought not to be regarded by a court of equity, when its aid is invoked to restrain the enforcement of a special assessment."

In that case, as in this before the court, the assessment of the property was by the front foot bounding and abutting upon the improvement. In that case, as in this, the assessment was made a lien and charge against the abutting property owned by the plaintiff. There, as here, the plaintiffs proceeded upon the ground that the assessment in question was in violation of the fourteenth and fifth amendments to the constitution, above quoted. And it will therefore be profitless to attempt any elaboration of the doctrine so clearly announced by the supreme court of the United States. We may say,

however, that it does not in any sense trespass upon the legitimate province of the state legislature. "But," observes Justice Harlan, delivering the opinion of the court, "the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go, consistently with the citizen's right of property." Then, stating the principle as announced in the syllabus, the learned justice continues:

"It is one thing for the legislature to prescribe it as a general rule that property abutting on the street opened by the public would be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum, representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the same was fixed in excess of the benefits received."

It is difficult to perceive any "benefit received" by the owner of lot 4 in square 24, on the corner of Cherry and Fourth streets, in the city of Macon, when the special assessment, as we have seen, amounts to one-fourth of its entire value, and when the imposition of the assessment by the city results in an immediate reduction of one-third of its general taxable value. The city would seem estopped from denying these remarkable facts, for they were ascertained from the finding of its sworn assessors. On the contrary, it not only cannot be denied with any semblance of reason that the excess of these paving charges over special benefits to the property holder are "of a material character," but they are apparently so extravagantly excessive as to shock the mind accustomed to constitutional and rational methods of municipal government. What people in time of peace would tolerate the unconstitutional confiscation of one-fourth of their holdings for general governmental purposes? It is true, however, that through long years of misgovernment, extortion, and oppression, the despairing taxpayer will sometimes all unresistingly submit to unlawful local exactions, which, if they were imposed by the general government, would likely result in revolution.

It is, moreover, urged that a court of equity will not intervene to restrain the collection of taxes, even though these may be illegal. This objection, it is true, is expressive of the general rule; and it is also true that a court of equity will not ordinarily relieve a party against an assessment for taxation unless he tenders or offers to pay what he deems or what is seen to be due. There is, however, an established exception to this rule, and the case under consideration is clearly within its operation. It is this: That where a rule or system of valuation is adopted by those whose duty it is to make the assessments which is designed to operate unequally and to violate a fundamental principle of the constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, then equity may properly interfere to restrain the operation of this unconstitutional exercise of power. Mr. High, in his work on Injunctions, declares that no principle is more firmly established than that

requiring that a taxpayer who seeks the aid of an injunction against the enforcement or collection of a tax has to pay or tender the amount which is conceded to be legally and properly due, or which is plainly seen to be due; but he also says:

"It is held, however, that the general rule requiring payment or tender of the amount actually due, as a condition to equitable relief against the illegal portion of the tax, has no application to the case where the entire tax fails by reason of an illegal assessment. And in such case an injunction is proper, without payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due, there being no valid or legal tax assessed."

See, also, Village of Norwood v. Baker, 172 U. S. 292, 293, 19 Sup. Ct. 186, 43 L. Ed. 443.

Since it is true that in this case the mayor and council of the city of Macon based their entire assessment upon frontage on the streets to be paved, without any regard to benefits to the property thus assessed, the entire tax must fail. It was practically a confiscation of the values thus exacted from the property holder, the proceeding was unconstitutional, the entire assessment is void, and it is proper for the court in this case to grant its injunction for the protection of the parties complaining. Indeed, it is conceded by the counsel for all the parties, save the city of Macon, that this paving assessment is null and void. To quote the language of Mr. Anderson in his forcible argument for the defendants:

"Our contention is that the paving assessment, just as set up in this bill, is absolutely void and contrary to the constitution of the United States."

But he contends that it is so distinctly void—that its nullity is so apparent on its face—that it does not create a cloud upon their title or over their rights, which the plaintiffs need seek the aid of the court to remove. Now, it is clear that this tax, if valid, is a lien upon the land; and said Mr. Justice Brown, for the supreme court, in Ogden City v. Armstrong, 168 U. S. 236, 18 Sup. Ct. 103, 42 L. Ed. 452:

"If a tax is a lien upon lands, it may then constitute a cloud upon title; and one branch of equity jurisdiction is the removal of apparent clouds upon the title which may diminish the market value of the land, and possibly threaten a loss of it to the owner." "It is doubtless true," the court continues, "that it has been held by this and other courts that if the alleged tax has no semblance of legality, and if upon the face of the proceedings it is wholly unwarranted by law, or for any reason totally void, as disclosed by a mere inspection of the record, such a tax would not constitute a cloud, and that the jurisdiction which is exercised by courts of equity to relieve parties by removal of clouds upon their titles would not attach. But when the illegality or fatal defect does not appear on the face of the record, but must be shown by evidence aliunde, so that the record would make out a prima facie right in one who should become a purchaser, * * * or when a deed given on a sale of the land for the tax would be presumptive evidence of good title in the purchaser, so that the purchaser might rely upon the deed for recovery of the land until the irregularities were shown, courts of equity regard the case as coming within their jurisdiction, and have extended relief on the ground that a cloud on the title existed or was imminent."

The case under consideration seems clearly within the scope of this authority. Proof aliunde must be made to show that no benefit resulted to the property from this pavement, and a tax deed given on a sale by the city would be presumptive evidence of good title in the purchaser; and, even should the purchaser take the advice of coun-

sel, he would find that the supreme court of the state has sustained assessments conforming in all respects to that before the court. I think that it would be difficult to discover a more portentous cloud. The acts of the legislature authorizing such assessment are presumed to be constitutional until they are held otherwise. That presumption has been sustained by the supreme appellate tribunal of the state. That decision has not been in terms expressly reversed, although in principle, as we have seen, it is declared erroneous. The city legislature has acted upon it, and has the physical power to sell the property, to put the owner out, and put the purchaser in possession, and to give him a deed which is prima facie evidence of his title. This is not a mere irregularity affecting a particular individual, but it is an unconstitutional and most injurious wrong, affecting all the property of holders of a particular class,—a wrong so fundamental that the power which may redress it is conferred upon the courts of the United States. In the present attitude of the state and municipal governments, in a controversy where the constitutional rights of the citizen are in issue it would be scarcely judicious for the courts of the United States to deny relief upon the ground that state action of the most energetic character is so plainly abhorrent to the fundamental law that it can with safety be ignored. It is usually safer to enjoin, than to tolerate violations of the constitution, resulting in the destruction of property rights. That it is necessary for the creditors to attack the lien of the city assessments is clear, from the fact that the act of the legislature gives them rank and priority of payment next in point of dignity to the liens in favor of the city of Macon for taxes due said city. Then their enforcement would preclude the rights of the complainants, for the city taxes rank in point of lien and priority next to the taxes due the state and county, which are liens superior to all others.

The other equities of the complainants are scarcely less important. Although the defendant W. A. Huff was under the obligation to pay the taxes on the property pledged to secure these debts, this was not done, but many tax fi. fas. have been issued, levies grossly excessive have been made, deeds have been executed and recorded, and transfers under such sales have been made, it is alleged, for the benefit of the debtor. The unpaid taxes amount to many thousand dollars. Much of this accumulation was properly assessable upon other property of the defendant, distributed throughout the county. While this is true, it is alleged that an attempt has been made to subject the particular property pledged to secure the debts of the complainants to this entire burden of taxation. This, if true, is manifestly inequitable, and the demurrer admits it to be true. The taxation assessed upon all the values owned by W. A. Huff and his cestuis que trustent, where they are liable, ought equitably to be apportioned between the property held by them, or pledged to secure their debts, and not fastened upon a particular lot, so as to wipe out the security of particular creditors. It is the duty of the court to so marshal the assets and to distribute these burdens as to make each piece of property bear its own share of the taxes. The liens of these numerous tax fi. fas., irrespective of the paving assess-

ment, if enforced exclusively upon it, would consume the property upon which these complainants have a special lien. The result would be destruction to their rights, while other creditors, and perhaps the debtor, would be proportionably benefited. Besides, the complainants have a general lien upon the equity of redemption of all the property owned by W. A. Huff, or by his children if the debt is against them. This property is alleged to be much greater in extent and much more valuable in character than the city property hereinbefore described. All of it is pledged, in one form or another. It is within the province of the court to so marshal the assets as to charge the outside property with its proportion of the accumulated taxes. This cannot be done at law, because the outside property has been conveyed by deed to particular creditors, who, it seems, have been favored throughout, even to the extent of exempting them from the payment of their due share of taxation. Since it is true, however, that this deed was given as a security for debt, it is competent for the court, through its receiver, under the circumstances, to take all of these properties in charge, set aside sales of the property which appear to be void, because of excessive and fraudulent levies, cancel the unconstitutional paving assessments, pay off debts to secure which deeds are made, and the judgments and mortgages, according to their equities and priorities, then settle with the general judgment creditors and other creditors according to the dignity of their claims, and restore the balance, if any, to the debtor.

The bill is not multifarious. It is a scheme to subjects assets of W. A. Huff and others who are jointly indebted with him to the valid liens of their creditors. It is impossible to leave out his children, because he is holding undivided interests with them and some of them are partly indebted with him, and to others transfers alleged to be illegal have been made.

Nor does it matter that some of the creditors have judgments which do not exceed $2,000, exclusive of interest and cost. At least one of the judgments exceeds this jurisdictional limit. With this other creditors holding liens of the same general character may unite or they may intervene. The law upon this subject is established.

"For the purpose of preventing a multiplicity of suits, a court of equity will entertain a bill filed by several creditors for the purpose of reaching the property of a common debtor, where such creditors have recovered judgments or decrees." Smith, Eq. Rem. Cred. § 72.

Again:

"Two or more persons unconnected with each other may be properly joined as defendants, as where the title to several pieces of property is in several defendants, and all have been concerned in acts tending to the same illegal result, forming the issue. In the same proceeding some of the defendants may be grantees in alleged fraudulent conveyances, some of them plaintiffs in whose favor judgments have been confessed, and some fraudulent mortgagees. The plaintiff's injury grows out of the fraud of the defendant, in which several parties may unite." Smith, Eq. Rem. Cred. § 74. "A bill filed by a creditor for himself and for the use of other creditors, and when the entire fund is taken possession of by the court for the benefit of all creditors, and an order is made for all to present their claims, entitles all creditors to present their claims, whether they are named in the bill or not, and whether they are judgment, specialty, or simple-contract creditors." Id. § 76.

It is said, however, that the complainant Bidwell cannot sue here, because his judgment was obtained in a state court; and Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729, is cited in support of that proposition.. It is sufficient to point out that that was a proceeding by an assignee of a judgment, when the assignor and the judgment debtors were both citizens of the same state, and since, in the outset, the court could not have entertained a suit to obtain the judgment, it could not exercise jurisdiction to enforce it. That is not the case here. Bidwell, holding a judgment for a sum exceeding the jurisdictional amount of the court, is a citizen of another state, and was entitled to bring an original suit in this court to enforce his judgment, and may therefore proceed here now. The rule is stated in Smith, Eq. Rem. Cred. § 178, as follows:

"The better doctrine, and one supported by reason and the trend of modern judicial decisions, is that a judgment court of a United States court may properly be made the basis of a suit in equity in a state court to attack and set aside a fraudulent conveyance. And so a judgment in a state court is a good foundation for a creditors' bill in the federal court."

And Mr. Justice Story, in his great work on the Constitution (volume 2, par. 1313), states that, if a judgment is conclusive in the state where it is pronounced, it is equally conclusive everywhere; citing Mills v. Duryee, 7 Cranch, 481, 3 L. Ed. 411; Hampton v. McConnel, 3 Wheat. 234, 4 L. Ed. 378; and 1 Kent, Comm. 243, 244. These and other authorities are cited and followed in the recent case of Alkire Co. v. Richeson (C. C.) 91 Fed. 79. For the reasons stated, and for others which might be gathered from the elaborate and carefully drawn bill, the demurrer must be overruled.