## WALKER v. POWERS.

1. A judgment is satisfied when, under proceedings ordered by the proper court, the lands of the defendant are seized, sold, and conveyed by the sheriff to the plaintiff, he bidding for them the amount of the judgment, interest, and costs.
2. The assignee of a judgment founded on a contract cannot maintain a suit thereon in a court of the United States, unless such a suit might be there prosecuted had the assignment not been made.
3. A bill is subject to demurrer for multifariousness, if one of the two complainants has no standing in court, or where they set up antagonistic causes of action, or the relief for which they respectively pray in regard to a portion of the property sought to be reached involves totally distinct questions, requiring different evidence and leading to different decrees.
4. Where real estate is alleged to have been conveyed in fraud of the grantor's creditors, and they, after his death, file their bill to subject it to the payment of their debts, — Quære, Are his heirs or devisees necessary parties.

APPEAL from the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

The case was argued by *Mr. Joseph P. Whittemore* for the appellants, and by *Mr. William F. Cogswell* for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a suit in chancery by Walker and Whittemore, the general purpose of which is to declare null and void certain sales and conveyances of real estate in New York, owned by Nelson P. Stewart, and to subject it to the payment of his debts. At the time of the transactions mentioned in the bill he was a citizen of Michigan. He died there in the year 1863, and George K. Johnson was appointed administrator of his estate in 1874. No letters of administration were issued in New York.

The debt on which Walker counts was a simple-contract debt, which was allowed by the probate judge in Michigan. The foundation of Whittemore's claim for relief is two judgments. One was recovered by him against Stewart in a court of New York on the 20th of August, 1862, and docketed on the 28th of that month in Monroe County, where the land in controversy is situated; the other was rendered in favor of

Elisha W. Chester, docketed about the same time, and assigned to Whittemore in 1872.

As regards the judgment in favor of Whittemore, the bill alleges that he, after the death of Stewart, instituted a proceeding in the nature of a *scire facias* against the terre-tenant in the proper court, and obtained an order under which the property so frequently mentioned in the bill as "Congress Hall," a hotel in the city of Rochester, was sold to him on a bid amounting to the debt, interest, and costs, and that he received the sheriff's deed for the property, on which he brought an action of ejectment, which is now pending.

The bill then charges a variety of transactions connected with the sale of this and other real estate under judicial proceedings against Stewart in his lifetime, and with conveyances made by him of the same, all of which are said to be fraudulent, and in pursuance of a conspiracy on the part of Stewart, the purchasers and others, to hinder and delay his creditors, and defeat them in the collection of their debts. The bill alleges that other large debts are held by numerous creditors, in behalf of whom, as well as of the complainants, the bill purports to be brought. Some of the real estate is alleged to be in the hands of innocent purchasers for value. Most of those charged with conspiracy are dead. The heirs or devisees of Stewart, though named, are not parties to the bill; nor, indeed, can they be made defendants, because they and the complainants are citizens of Michigan. The administrator lives in that State, and though a creditor, as the bill alleges, to the amount of $80,000, is not made a party, nor is any reason given why he did not take out administration in New York, as it would have been eminently proper for him to do.

The bill was dismissed on demurrer, and this appeal is taken by the complainants.

It will be perceived that Whittemore, the principal complainant, founds his right to relief on two totally distinct causes of action. In one he asserts that, by virtue of a judicial sale, he is the owner of Congress Hall, and has a complete legal title thereto, on which he is prosecuting an action of ejectment. The bill shows that, by the sale under which he became such owner, his judgment against Stewart was satis-

fied; and as the execution must be presumed to have, been returned to the proper office with the sheriff's proceeding indorsed, the judgment stands satisfied by the record of the court in which it was rendered. He has made no attempt to set aside this satisfaction, but, on the contrary, he is by this bill insisting on the fruit of that satisfaction, by endeavoring to remove the cloud on his title, created by the fraudulent proceedings of which he complains. In reference to that judgment he is no longer a creditor of Stewart, nor has he any debt chargeable on or provable against Stewart's estate. What interest founded on this judgment has he, then, in any other property which Stewart held in his lifetime, or in the administration of the assets of his estate? How can he, on the foundation of that judgment, inquire into frauds in regard to other property than that which he bought? What interest apart from the judgment in favor of Chester has he in common with other creditors of Stewart, and how can he maintain any joint suit with them?

So far from being able to do this, or having any common interest with them, he asserts a right in conflict with their interests. If the claim of the defendants who are in possession of Congress Hall, the only property of much value mentioned in the bill, should be declared void as against Stewart's creditors, then, while it is their interest to subject it to the general administration among all the creditors, we have Whittemore asserting that this result inures to his sole benefit, as he has already taken steps by which he has become the exclusive owner when the frauds are swept out of the way.

It is impossible to see, therefore, what interest founded on that judgment Whittemore has in a general administration of the assets of Stewart, or that he has any interest in common with Walker or the other creditors, or a right to call upon the defendants other than those setting up claim to Congress Hall.

This view involves no hardship on Whittemore. He has satisfied his debt against Stewart's estate by the purchase of that property. The matters he now sets up can be litigated with the adverse claimants in a separate suit, which would concern him and them alone.

In reference to the judgment in favor of Chester, on which, as his assignee, Whittemore asks relief, it is urged as ground of demurrer, that Chester being a citizen of the same State with Stewart, his assignee is incapable of prosecuting this suit in a Federal court. It was brought in 1870, and the question here raised must be decided by a construction of the act of March 3, 1875, c. 137. 18 Stat., pt. 3, p. 470.

The first section of that act, after declaring in terms intended to be exhaustive, the jurisdiction of the Circuit Courts of the United States, and certain limitations on that jurisdiction, as to residence and service of process on defendants, adds this further restriction : " Nor shall any Circuit or District Court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon, if no assignment had been made, except in cases of promissory notes, negotiable by the law merchant, and bills of exchange."

Since Whittemore cannot sustain this suit on the ground of his own judgment against Stewart, because that is satisfied by the sale of property, the only other ground on which he can succeed is as the owner of this judgment in favor of Chester. That judgment is, then, the foundation of his suit in the Circuit Court. It is a cause of action which he holds by assignment from a party who cannot sue in that court. Without this cause of action he has no standing in court, and has no right to ask the court to inquire into the other matters alleged in the bill. It is as much the foundation of his right to bring the present suit as if it were a bond and mortgage on which he was asking a decree of foreclosure. See *Sheldon* v. *Sill*, 8 How. 441.

If, then, the judgment is a contract, it gives Whittemore no right to sue in the courts of the United States for New York. There is some conflict in the authorities as to whether a judgment *eo nomine* is a contract. In 1 Story on Contracts, sect. 2, they are divided into three classes, in the first of which judgments are mentioned with recognizances, statutes staple, &c. It is, however, permissible in all cases, where justice requires it, to inquire into the nature of the demand on which the judgment was rendered. If rendered on a contract, the judgment

is a contract, the nature and extent of the liability having been thereby judicially ascertained.

The bill in this case alleges that "the debt on which this judgment was recovered accrued in the year 1858." It was, therefore, recovered on a contract, and the present suit is a suit to give a remedy on that contract, and any decree rendered in favor of the complainant would be intended to enable him to recover the money due on the contract.

The Circuit Court, if the judgment of Chester had been there recovered, might have jurisdiction of the case to remove obstructions to the enforcement of its own judgment, no matter who for the time being was its owner. But where a party comes for the first time in a court of the United States to obtain its aid in enforcing the judgment of a State court, he must have a case of which the former court can entertain original jurisdiction. *Christmas* v. *Russell*, 5 Wall. 290.

It remains to be seen whether the suit can be prosecuted further on the part of Walker.

A very learned argument, with a review of the authorities, is made by counsel for the appellants to show that it is not essential to the relief sought that there should be a judgment and an execution returned *nulla bona.*

We do not think it necessary to enter upon the consideration of that question as the case is presented to us.

If what we have already said of the standing of Whittemore is sound, the bill is liable to the objection of multifariousness —one of the points specified in the demurrer — on almost every ground on which that objection may be taken to a bill in chancery.

1. There is a misjoinder of parties complainant.

There are but two complainants. Whittemore, as we have seen, has no standing in the court, and is, therefore, improperly joined with Walker, if Walker has such a standing ; and the defendants cannot be required, in litigating with Walker any right he may have against them, to contest with Whittemore, who on his own showing has no right in that court. It is true the difficulty could have been removed if Whittemore had by an amendment been dismissed from the case. This might have been done after the demurrer was sustained. But

no such leave was asked, and the bill, as it originally stood, was dismissed.

2. The causes of action and the relief sought in regard to Congress Hall and the other property are distinct, in some respects antagonistic, and such as cannot properly be joined in the same suit. Whittemore seeks to have his title established in regard to Congress Hall, and the cloud on it created by the fraudulent sales and conveyances removed, so that he may be declared to be the owner of that property. In this matter no one is interested but himself and one of the defendants. The prayer of the bill is that the other property may be subjected to the payment of Stewart's debts; and in this Walker and all the other creditors of Stewart are interested, and Ten Eyck also as defendant.

A case bearing a strong analogy to the one before us is *Emans* v. *Emans*, 14 N. J. Eq. 114.

After a partition of real estate among part owners, a controversy arose as to its fairness, which was submitted to arbitrators. They awarded that the defendant should convey to the complainant 23.30 acres to equalize the partition. The bill prayed that the defendant might be decreed specifically to perform the award; if not, that the court should declare how much more and what lands he should convey to make the partition equal; and, lastly, for general relief. On demurrer for multifariousness the court says: " The leading object of this bill is to enforce specific performance of an award of arbitrators. The submission to arbitration related to the fraud or unfairness of a partition of certain lands devised to the parties, and included the power of making a just partition. A new partition was in fact made. If the award cannot be enforced, the bill further asks that the court will relieve against the unfairness or fraud of the partition. Now, it is apparent that these are matters of a distinct character. The one relates to the validity of the submission and award and the power and propriety of enforcing a specific performance, and the other to the equity and fairness of the partition. The matters involve totally distinct questions, requiring different evidence, and leading to different decrees."

Another analogous case is *Sawyer* v. *Noble and Randall*, 55 Me. 227.

Sawyer and Noble were partners. The bill charges Noble
with many improper transactions justifying a dissolution of the
partnership, and, among others, a fraudulent and pretended
sale of the stock in trade and the good-will of the business to
Randall, his co-defendant. It prays that this sale may be set
aside and the partnership dissolved, and an account and settle-
ment be had between the complainant and Noble. The court
says: " It is obvious that Randall is in no way interested in the
partnership affairs of Sawyer, and that the settlement of the
affairs of the firm and the rescission of a fraudulent sale are dis-
tinct and unconnected matters, and properly to be determined
in separate suits."

By multifariousness " is meant the improperly joining in one
bill distinct and independent matters, and thereby confound-
ing them; as, for example, the uniting in one bill of several
matters, perfectly distinct and unconnected, against one de-
fendant, or the demand of several matters of a distinct and
independent nature against several defendants in the same
bill." Story, Eq. Pl., sect. 271. In Daniell's Chancery Prac-
tice, 335, it is said in explanation of this that " it may be that
the plaintiffs and defendants are parties to the whole of the
transactions which form the subject of the suit, and, neverthe-
less, those transactions may be so dissimilar that the court will
not allow them to be joined together, but will require distinct
records."

3. It seems to us, also, though of that we are not quite so
sure, that if this real estate is to be subjected to the payment
of Stewart's debts, Frederick S. Stewart, Helen W. McConnell,
and Adeline M. Johnson, who are alleged to be his only heirs
and the devisees in his unprobated will, should be parties to
the bill. The mere allowance of the debt of Walker by the
Probate Court is not conclusive evidence against them in a
suit to reach the real estate of their ancestor and devisor.

The State where the lands sought to be reached are situate
has, by statute, enabled her courts to entertain jurisdiction
of necessary parties not within reach of process, and greatly
modified the rules of practice and pleading. It is possible
that this bill, or some part of it, might, by making additional
parties, be sustained in one of her courts. But we are satis-

fied that the effort to prosecute it in the Circuit Court of the United States, with the misjoinder of some parties and the nonjoinder of others, — with the connection of matters totally distinct in the right asserted and the relief sought, — and with the principal party complainant entitled to no relief there, is attended with insuperable difficulties, and that the bill was properly dismissed.

*Decree affirmed.*