CHARLESTON.

SHAFER *v.* O'BRIEN.

Submitted June 18, 1888.—Decided Dec. 1, 1888.

1. SPECIFIC PERFORMANCE—CHANCERY PRACTICE—FOREIGN CORPORATION—SERVICE.

In this State a personal decree may be rendered for specific performance against a foreign corporation, upon which actual service has been had within the State under the provisions of our statute.   (p. 606.)

2. SPECIFIC PERFORMANCE—CHANCERY PLEADING—MUTIFARIOUSNESS.

A bill that asks a specific performance against one defendant and to enjoin a suit for unlawful detainer brought by other defendants claiming under title from the same party, against whom specific performance is sought, is not multifarious.   (p. 606.)

*Merrick & Smith* and *Van Winkle & Ambler* for appellant.

*V. B. Archer* for appellees.

JOHNSON, PRESIDENT :

In March, 1884, J. R. Shafer filed his bill in the Circuit Court of Ritchie county, in which he alleged that in the year 1872 the West Virginia Oil & Oil-land Company, a Michigan corporation, owned a tract of oil land in said county and continuously owned the same until the commencement of this suit; that during the year 1872 and for many years thereafter one B. S. Compton was the president of said company and a director and member of the executive committee; that on the 15th day of April, 1872, the said company by said Compton, its president, made a certain contract in writing with Gilchrist & Clarke, which gave to said parties the right to put down one or more oil-wells on

the territory of said company, to be located on or near Whitwood run, and provided, that the company might, after the wells were drilled, pay the cost of the same and take possession, but, if the company did not do so within three months, after the wells were completed, then the parties, who drilled the wells should have, hold and operate the same for the term of fifteen years from the date of the contract, paying to the company as royalty one third of all the oil produced therefrom; that, about the time said company made said contract with Gilchrist & Clarke, the said company by its said president made a number of similar contracts with several other persons, some of which were oral, others were evidenced by *memoranda* and letters; that among the contracts so made was one with C. Coville and J. Garber, who did business as Coville & Garber; that on the 16th day of April, 1872, the said B. S. Compton, president of said company, wrote from the principal office of said company in Monroe, Mich., to said Garber at Petroleum, W. Va., the following letter:

"*Friend Garber*—DEAR SIR: I guess from the intimation from Petroleum that there is some considerable excitement on oil-matter, developments, *etc.* I write this to say, you, Coville and Barnum, will take such places as you desire, and on the terms as others; I mean Clarke & Gilchrist and others. At any time after three months' pumping our company has the right to pay expenses of well and take same; the royalty being one third during the time. I now think I shall be at Petroleum soon. Yours, very truly, B. S. COMPTON."

The bill alleges that said Barnum was Barnum G. Compton, who operated separately and is not concerned in the property in dispute here; that, immediately after the contract was made, Coville & Garber commenced in the month of April, 1872, to drill and put down certain oil wells on lots 6 and 7 on Whitwood run, and what was known as the "Gore;" that they drilled and equipped six wells, which have produced large quantities of oil and are still producing; that the said company up to 1881 received the royalty oil directly, and since then said royalty has been paid to receivers appointed by the Circuit Court of the United States

for the district of West Virginia; that said rent-oil was received by said company and its representatives without objection, and the right of Coville & Garber has never until recently been questioned by said company or any one else; that a suit was brought by C. Coville in the Circuit Court of Wood county against M. C. C. Church, trustee, said Garber and others, defendants, the object of which among other things was to dispose of said wells; and the special receiver appointed in said cause was directed to sell said oil-wells, and on the 1st day of October, 1883, he did sell them, and the plaintiff became the purchaser, paid the purchase-money and was at once placed in possession of the wells; that the receiver made and delivered to him a deed for the same; that on the 24th day of December, 1878, Garber executed a deed of trust on his interest in said wells, to secure certain creditors mentioned in said deed; that in 1880 said interests were sold under said trust and purchased by the plaintiff; that said wells were drilled upon the same terms as those of Gilchrist & Clarke, which gave them the right to use and operate them for the term of 15 years from the date of the contract, and that this is evidenced by the said letter written to Garber by B. S. Compton; that one John O'Brien and P. W. Crumley now dispute the right of plaintiff under some pretended right, which they pretend in some way recently to have received from said oil-company, long after said contract was made. The exact nature of said claim of said O'Brien and Crumley the plaintiff does not pretend to know, but alleges, that, if they have any paper or writing, on which such claim is based, it is a cloud on the plaintiff's title, and ought to be removed; that said O'Brien and Crumley, seeking to defraud and wrong the plaintiff and seeking to take advantage of the fact, that the said oil-company never gave to Coville & Garber any formal lease for said premises, which might be a necessary part of their evidence in an action at law, have brought an action of unlawful detainer in the Circuit Court of Ritchie county; that the writ was returnable on the 18th day of February, 1884, and has been served on the plaintiff; that while plaintiff is entitled under the circumstances to the free use and occupation of said wells for at least the term of fifteen years from April 16, 1872, and

while that right will be fully recognized and enforced in a court of equity, yet he cannot safely trust to these circumstances in a court of law; that he is advised and charges, that he is entitled, not only as to said oil-company but also as to its subsequent assignees to a complete and specific performance of said contract in all its terms; for, if this were not the case, a fraud will be perpetrated on the plaintiff, if he should be turned off before the expiration of his term, when said company has received in performance of said contract thousands of barrels of oil, and Coville & Garber have expended thousands of dollars to produce it; that he is advised, that he is entitled to have the said O'Brien and Crumley enjoined from prosecuting their said action of unlawful detainer and from prosecuting any other action or doing any other act to interfere with the use, occupation and possession of said wells and to have such other relief, as may be necessary to a complete and specific performance of said contract so made with Coville & Garber. The prayer is for an injunction against O'Brien and Crumley, their agents *etc.* and for a specific performance of the contract by the West Virginia Oil & Oil-land Company. The injunction was granted.

The defendants, O'Brien and Crumley, demurred to the bill for want of equity, and because, it is claimed, the bill is multifarious. The same defendants answered the bill. In their answer they deny any knowledge of any other contracts made with other parties for permits to bore for oil, or that they knew anything of any pretended claim by Coville & Garber for a lease or agreement for a longer term than ten years. They aver that the permit by B. S. Compton to Coville & Garber to use said wells and territory was limited to ten years, and that Coville & Garber never claimed that said permit was to continue beyond the term of ten years; but that J. R. Shafer, who purchased at public sale the right and title only of Coville & Garber, is now desiring to have said term extended to fifteen years notwithstanding the fact, that prior to the time of his purchase and on the day of the sale, before he purchased, he was fully notified, that said term had expired, if any existed. The defendants set out their title, which is accompanied by the exhibits, which show the title

in the defendants, so far as the parties could transfer it; that in 1875 the said company made a lease of said property to J. C. Gilman; that afterwards said lease was by Gilman assigned to B. S. Compton, who assigned to Mrs. C. Coville, who assigned to John O'Brien, one of the defendants, who assigned one half thereof to his co-defendant, P. W. Crumley, and afterwards P. W. Crumley assigned one half his interest to his brother, H. G. Crumley; that all these assignments were made for valuable consideration without any notice of any claim on the part of the plaintiff or those, under whom he claims; that both Coville and Garber admitted, that their permit was for ten years only; that all Shafer received by virtue of his purchase was the interest of Coville & Garber; and they deny that they ever had any interest in said lands, and, if they had, it expired in April or May, 1882, *etc.*

Numerous depositions were taken, and on the 16th day of July, 1886, the cause was heard upon the process duly executed, the bill and exhibits filed therewith, the demurrer and answer of the defendants, O'Brien and Crumley, and joinder in said demurrers, and replications to said answer, depositions *etc.*; and the court held, that the plaintiff had not shown himself entitled to the relief prayed for, and dissolved the injunction and dismissed the bill with costs. From this decree the plaintiff obtained an appeal and was granted a *supersedeas.*

It is insisted by the counsel for the appellees, that the demurrer to the bill should have been sustained, because no personal decree could have been rendered against the West Virginia Oil & Oil-land Company, because, as the bill shows, it is a foreign corporation. It is true, that it was held in *Gilchrist* v. *Land Co.,* 21 W. Va. 115, that this Court would not here enforce a personal judgment recovered against said company in the State of New York, because by the construction, which the New York courts put upon the statutes of that State authorizing proceedings against foreign corporations, no judgment *in personam* could be rendered in that State against a foreign corporation, unless it appeared to the action; and in the opinion in that case it was said, (page 119,) after quoting the New York statute: "This language is very broad, but we must give it just such effect as the courts of

New York have given it, and none other. If a construction has been placed upon it by the said courts, we would adopt it, though it was directly the reverse of a construction we had given to similar language in our Code."

In our State we have held, that the return of a sheriff, that he had served a writ on a foreign insurance company doing business in this State by serving it on its "lawful attorney," is *prima facie* a good service of the writ and gives to the court jurisdiction to render a personal judgment against such foreign insurance company. *Wagon Co.* v. *Insurance Co.*, 27 W. Va. 314. So there might have been a service on the foreign corporation in this case, which would have authorized the court to pronounce a personal decree, if the facts warranted it, requiring said company to specifically perform its contract. It does not appear whether the company was served or not, except from the decree, which declares that process was " duly served." The court did not require a specific performance, because in its opinion the plaintiff was not entitled thereto, and it dismissed the bill. But if the foreign corporation had been served with process,—and, as the decree declares it was, it must be taken as true,—if the facts had warranted it, a decree for specific performance could have been decreed against it. *Vinal* v. *Oil Co.*, 14 W. Va. 687.

But it is claimed that the bill is multifarious. Judge Story in his Equity Pleadings (section 533,) which is quoted and approved in *Shaffer* v. *Fetty*, 30 W. Va. 267, (4 S. E. Rep. 278) says : "The result of the principles to be extracted from the cases on this subject seems to be that, when there is a common liability and a common interest,—a common liability in the defendants, and a common interest in the plaintiffs, different claims to property, at least if the subjects are such as may without inconvenience be joined, may be united in one and the same suit." So it was held in *Arnold* v. *Arnold*, 11 W. Va. 455, that a bill was not multifarious, which asked to set aside deeds by the intestate and also asked a partition of the lands. Here a decree for specific performance is asked, and to enjoin parties from recovering said property at law, who claim title under the same party, against whom the specific performance is sought It seems to me, that it is not contrary to equity pleading to permit this to be

done. The whole matter can thus be concluded in one suit, and no one be put to additional costs and inconvenience thereby. The demurrer should have been overruled.

Is the decree right on the merits? There are a number of questions discussed, which it will not be necessary to consider; for if the parties, under whom the plaintiffs claim, Coville & Garber, had an interest in said property only for the term of ten years, then all their right, title and interest expired in the spring of 1882; and it is not therefore necessary to con-sider, whether Compton had any right to bind his company by giving a permit for either ten or fifteen years. If the per-mit or contract expired in 1882, of course when Shafer, the plaintiff, bought at the sale made by the receiver in October, 1885, all the right, title and interest, that Coville & Garber had in and to said property, he bought nothing; for at that time they had no interest in the land and the said oil-wells.

Then the only question left material to this controversy is: Did said permit expire in the spring of 1882, at the end of ten years, or not until the spring of 1887, at the end of fifteen years, from the making of the contract? An effort is made by the plaintiffs to show, that their permit was the same as that given to Gilchrist & Clarke in 1872, and to show by the decision of this Court in *Vinal* v. *Oil Co.*, that it was there decided to be fifteen years. The facts in that case have nothing to do with what is proved in this record. This cause must be decided by what appears in this record. It seems to me, a fair construction of the letter written by B. S. Comp-ton to Garber, which is copied in the bill, will not show that the time, for which term would run, is there indicated at all. The language used is: " I write this to say, you, Coville & Barnum will take such places that you desire, and on the terms as others; I mean Clark & Gilchrist and others; " the writer then says what he means: " At any time after three months' pumping our company has the right to pay expenses of well and take same, the royalty being one third during the time."

But, even if it would bear that construction, Gilman and Coville both state in their depositions, that, after Gilchrist & Clarke had commenced work, their permit was changed and was to extend to fifteen years instead of ten, as at first

agreed. But it is true, that the written permit to Gilchrist & Clarke is dated the 15th of April, 1872, and that to Garber on the 16th of April, 1872. Be this as it may, a number of witnesses testify, that it was understood that these permits were to be for ten years only. The testimony is also clear, that Coville & Garber both many times declared before the sale to the plaintiff, that their permit was limited to ten years. This is proper evidence, as they were declarations made, while they were in possession of the property, against their interest. It is also clearly shown, that the plaintiff, before he purchased, had notice of the fact that the term was only ten years. So he can not claim to have been an innocent purchaser. He could buy no greater term in the property, than Coville & Garber had. It is true, the evidence is conflicting, but the court by its decree has found, that the plaintiff has no claim; and in a cause like this under well-established principles we would not disturb his finding. The decree of the Circuit Court is affirmed.

AFFIRMED.