## RUMBARGER v. YOKUM et al.

(Circuit Court, N. D. West Virginia November 18, 1909.)

1. EQUITY (§ 46*)—JURISDICTION—ADEQUATE REMEDY AT LAW.

It is the rule of the federal courts that, to exclude jurisdiction in equity, a remedy at law must not only be plain and adequate, but also complete; and if it is doubtful, difficult, or not so complete as in equity, nor so efficient and practicable to the ends of justice and its prompt administration, then equity will take jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157–163; Dec. Dig. § 46.*]

2. EQUITY (§ 46*)—JURISDICTION—ADEQUATE REMEDY AT LAW.

Where a case requires the administration of a trust, the cancellation or release of liens, the removal of clouds upon title, or an accounting, and especially where fraud is charged, involving the consideration of fiduciary and trust relations, although the rendering of a pecuniary judgment may be one of the results sought, the remedy at law is neither adequate nor complete, and equity will assume jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157–163; Dec. Dig. § 46.*]

3. ACCOUNT (§ 12*)—JURISDICTION OF EQUITY—ADJUSTMENT OF LIENS.

Where a usurious contract was secured by a trust lien upon property which the creditors by contracts agreed to dispose of and from the proceeds pay off prior liens, the creditor has the right to resort to equity for a full settlement and accounting.

[Ed. Note.—For other cases, see Account, Dec. Dig. § 12.*]

4. EQUITY (§ 150*)—PLEADING—MULTIFARIOUSNESS.

A bill against different lienholders on the same property, to ascertain and have adjusted and settled all of the liens, is not multifarious.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 150.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by Robert R. Rumbarger against Humbolt Yokum and others. On demurrer to bill. Demurrer overruled.

Rumbarger files his bill against Yokum, Strader, Greynolds, trustee, Cobb, trustee, Sincell, trustee, and Ada A. V. Halterman, in which, after charging diversity of citizenship and the amount in controversy to exceed $2,000, he alleges that he was the owner of two tracts of land in Randolph county, W. Va., the one within the corporate limits of the city of Elkins, subdivided into 50 lots, the other a farm of about 600 acres within two miles of Elkins; that the 50 lots were worth more than $18,000, and the farm easily $15,000; that on January 10, 1906, he conveyed both said tracts of lots and the farm to Edward H. Sincell in trust to secure a loan of $10,000 made to him by Mrs. Halterman; that on March 13, 1906, he again conveyed these lands to W. H. Cobb in trust to secure Humbolt Yokum and J. F. Strader three notes, for $5,000 each; that on said last-named date, and as part of the trust deed contract inter partes, Yokum and Strader executed to him a contract setting forth that, in consideration of a loan of $10,000 made by them to him, he had executed the three $5,000 notes, payable in four months, to secure which he agreed to give as collateral security 150 shares, of par value of $100 each, of the Snowbird Lumber Company, a North Carolina corporation, and to execute the deed of trust upon the lots and farms referred to, and, if the notes were not paid at maturity, he was to have the privilege to renew them for 4 additional months; that by reason of financial straits he executed the three notes for $15,000 for a loan only of $10,000, and agreed to pay 6 per centum interest upon the full amount of such notes; that on September 12, 1907, he and Yokum and Strader entered into another contract, set forth, whereby it was agreed that the lots in Elkins should be sold at public auction and the proceeds arising therefrom should be applied, first, to the expenses of sale, three-fourths of which was to be chargeable to·Rumbarger, and the remaining fourth to·Yokum and Strader; second, to the payment of said $15,000 loan and its accumulated interest; third, any residue to be divided, three-fourths to Rumbarger and one-fourth to Yokum and Strader; and, further, it was agreed that the farm (which had been purchased August 23, 1907, by Yokum and Strader at a sale thereof made by Sincell, trustee, under the Halterman deed of trust) should be held by Yokum and Strader in their names until January 1, 1908, and meanwhile, if a sale thereof should be made either by Rumbarger or Yokum and Strader, its proceeds should be applied to the payment to Yokum and Strader of $10,733.46 and its accrued interest, advanced by them for the purchase of the farm, and any residue to be divided three-fourths to Rumbarger and the remaining fourth to Yokum and Strader, but if no sale should be made on or before said January 1, 1908, this farm should be subject to a further agreement, its possession until then to remain with plaintiff, Rumbarger; that Sincell, trustee in the Halterman trust, had advertised all of said property, lots and farm, for sale when the $10,000 debt of Mrs. Halterman had become due and payable in the summer of 1907, whereupon it was agreed inter partes that Yokum and Strader should buy in the properties for the amount of the Halterman debt, sell the lots at auction, which was done, and the sum of $18,435 realized therefrom by them, the whole of which they kept, except the sum of $973.59, which they paid to plaintiff; that before making sale of the lots the agreement of September 12, 1907, was entered into, changing the purchase by Yokum and Strader of the farm from Sincell into a trust to secure them the payment of the $10,000 Halterman debt assumed by them; that Yokum and Strader charged the fund arising from the sale of the lots with illegal and improper costs and expenses, and with illegal interest upon the $15,000, in fact representing a loan of but $10,000, as shown by a statement made by them and incorporated in the bill; that, instead of allowing plaintiff to remain in possession of the farm until January 1, 1908, as provided by the contract of September 12, 1907, Yokum and Strader took possession thereof, received its rents, issues, and profits, wholly disregarding the agreement, and have sold or agreed to sell 100 acres thereof to one Mouse, who is in possession; that Yokum and Strader took possession of the proceeds of the lot sales (except the sum of $973.59), and deducted enormous and unconscionable expense, in furtherance of a scheme to charge him with further usury by naming

it "expenses," "profits," "expenses paid by Yokum," and "expenses paid by Lew Greynolds," as set forth in their statement, and thus to cheat and defraud him entirely out of the value of his lands and property; that on November 1, 1907, plaintiff and wife, Yokum, Strader, and their wives, conveyed to Greynolds, trustee, these properties for the purpose of having him in their behalf make conveyances of the lots sold to the purchasers thereof, and for the purpose of disposing of the farm as contemplated by the agreement of September 12, 1907, but, contrary to its purpose and intention, Yokum and Strader have assumed full possession of the farm, now claim it as their own, have refused to make any settlement with plaintiff, or to enter into any further contract in relation thereto, as provided by said last-named contract; that no deed by Sincell, trustee, Cobb, trustee, or Greynolds, trustee, has been made to any one for the 600-acre farm, and Yokum and Strader have not in fact paid the full amount of the Halterman trust debt, and Sincell, trustee, or Mrs. Halterman, one or the other, holds plaintiff's $10,000 note therefor; that the contract of March 13, 1906, is unreasonable, unconscionable, and illegal under the laws of West Virginia; that plaintiff only owed Yokum and Strader $10,000 in fact upon the $15,000 obligation, and if purged of its usury, and only legal and proper expenses are charged upon the sale of the lots, plaintiff would not owe to exceed $5,000 to them, which he admits would be chargeable as a lien upon the 600-acre farm. The prayer of the bill is that the contract and deed of trust of the 13th day of March, 1906, be purged of usury; that an accounting be had between himself and Yokum and Strader; that said deeds of trust to Cobb, their trustee, and to Sincell, trustee, be released or set aside so as to give perfect title to the purchasers of the lots; that they be set aside or released as against the farm, after the court has ascertained the true amount due from plaintiff to Yokum and Strader, has charged such amount as a lien thereon, and fixed the time and terms of payment thereof; and for general relief. To this bill the defendants Yokum and Strader have entered their demurrer, alleging the bill to be multifarious, the plaintiff to have a full, complete, and adequate remedy at law, and that the allegations of the bill are not apt and sufficient to warrant a court of equity to surcharge and falsify the account rendered by such defendants to plaintiff and settled by them. This demurrer has been argued and submitted for decision.

Cunningham & Stallings, for plaintiff.
W. B. Maxwell, for defendants.

DAYTON, District Judge (after stating the facts as above). The main contention made by able counsel who has argued in behalf of this demurrer is that plaintiff has a plain, adequate, and complete remedy at law. While admitting that this bill would lie in the state courts of West Virginia, by virtue of the decisions of its courts construing the usury laws of the state (sections 3429, 3430, 3431, and 3432, Code W. Va. 1906), he insists that it cannot be maintained in a federal court, because of the express prohibition of Act Cong. Sept. 24, 1789, c. 20, 1 Stat. 82 (section 723, Rev. St.; U. S. Comp. St. 1901, p. 583), which provides:

"Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law."

Without attempting a discussion of the vast number of decisions construing this statute, it may be admitted at once that it is simply declaratory of the equity rule established by the High Court of Chancery of England, that the federal courts have more rigidly observed the line of demarcation between law and equity jurisdiction than have the courts of most of the states, and in a number of instances do not entertain equity jurisdiction where such state courts would. While

this is true,. the federal courts have held that the remedy at law must not only be plain and adequate, but it must also be complete; and if the remedy at law is doubtful, difficult, not adequate to the object, not so complete as in equity, nor so efficient and practicable to the ends of justice and its prompt administration, then equity will take jurisdiction. Whitehead v. Shattuck, 138 U. S. 151, 11 Sup. Ct. 276, 34 L. Ed. 873; Spokane Mill Co. v. Post (C. C.) 50 Fed. 431; Smith v. Am. Nat. Bank, 89 Fed. 840, 32 C. C. A. 368.

While it would be next to impossible to establish a certain fixed rule to define the dividing line between the two jurisdictions, it is safe to say, in connection with this case, that in cases seeking only a pecuniary judgment for a specific amount the remedy at law is adequate and. complete. It is just as safe to say that when the case requires the administration of a trust, the cancellation or release of liens, the removal of clouds upon title, an accounting—especially where fraud is charged, involving the consideration of fiduciary and trust relations—although the rendering of a pecuniary judgment may be one of the results sought, the remedy at law is neither adequate or complete, and equity will assume jurisdiction. Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183.

Under these principles, it would seem plain that if Rumbarger had simply borrowed $10,000 from Yokum and Strader, and, as a usurious consideration for such loan, had agreed to pay and actually did pay $15,000, with interest, then his remedy at law to recover back the $5,000 and interest paid upon it would be plain, adequate, and complete; but when, to secure this debt, he created a trust lien upon these lots and this farm, accepted by Yokum and Strader and by contracts, established a trust with them, whereby they undertook to control the sale of the lots and farm, administer and disburse the proceeds, assume to pay off the prior trust lien due to Mrs. Halterman, his right to demand in equity a settlement on their part of these trust obligations, the ascertainment of the true state of indebtedness between them, purged of all usury and of all excessive and illegal costs and expenses of administration, the release of all such trust liens, and a reconveyance to him of the farm upon condition of his repayment to them of such true sum due from him to them, when so ascertained, is clear and indisputable.

The charge that this bill is multifarious, and therefore subject to demurrer, in my judgment, is not tenable. Mrs. Halterman's deed of trust covered both lots and farm; so did that of Yokum and Strader. The contracts set up in the bill involve these same subject-matters. The scope and purpose of the bill, from its allegations, may well be stated to be to clear off the liens now existing against the farm (sales made of the lots not being assailed) and ascertain the true amount chargeable thereon due to Yokum and Strader. The prior lien of Mrs. Halterman is not released, and she still holds Rumbarger's note for the debt secured thereby. It is charged that, while Yokum and Strader assumed to pay this debt to her, they have not in fact paid the whole of it. Under such circumstances, she and her trustee, Sincell,

are both proper and necessary parties. It is always to be remembered that the determination of whether a bill is multifarious or not is a question of sound discretion, dependent upon the facts of each case, and the very general ruling of the courts is that a bill which involves the same indivisible subject-matter is not multifarious because of separate claims thereto. United States v. Am. Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450; Walker v. Powers, 104 U. S. 245. 26 L. Ed. 729; Brown v. Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; South Penn Oil Co. v. Calf Creek O. & Gas Co. (C. C.) 140 Fed. 507; Arnold v. Arnold, 11 W. Va. 455; Shafer v. O'Brien, 31 W. Va. 601, 8 S. E. 298.

The third ground of demurrer, that the allegations of the bill are not apt and sufficient to surcharge and falsify the account rendered by Yokum and Strader, would possibly be true, if the sole purpose of the bill was to secure an accounting; but, as herein pointed out, this is not its sole purpose. It seeks to secure a settlement of trust obligations, over which equity must take jurisdiction.

The demurrer will be overruled.