HOWARD v. NATIONAL TELEPHONE CO. et al.

(Circuit Court, N. D. West Virginia. October 17, 1910.)

1. CORPORATIONS (§ 211*)—STOCKHOLDER'S BILL—RIGHT TO SUE—INTEREST.

Where a stockholder's bill to compel the rescission of a transfer of a majority of the corporation's common stock alleged that complainant was the owner of 31 shares of the corporation's preferred stock, the par value of which was $3,100, which, with the other stock of the company, was threatened with destruction in value by reason of the transferee of the common stock having gained illegal control of the corporation's property and affairs, it showed a sufficient interest in complainant to entitle him to sue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 815; Dec. Dig. § 211.*]

2. PARTIES (§ 75*)—DEMURRER.

Where a bill on its face does not disclose a lack of necessary parties, it is not demurrable on that ground.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 122–131; Dec. Dig. § 75.*]

3. CORPORATIONS (§ 211*)—TRANSFER OF STOCK—RESCISSION — STOCKHOLDER'S ACTION—BILL—CERTAINTY.

Where a stockholder's bill to compel a rescission of a transfer of $10,000,000 par value of common stock of the corporation alleged that, after the corporation had acquired stock control in certain underlying companies and had issued its bonds and incurred other indebtedness and had issued and sold its preferred stock, its board of directors, without the knowledge or authority of its stockholders, as required by Code 1899, W. Va. c. 53, § 24 (Code 1906, § 2253), issued the full amount of the corporation's common stock and sold the same for less than par to another corporation, which, in turn, assigned and delivered the same to defendant C. Company for a sole consideration of certain services rendered, which were of a value not more than one-tenth of the par value of the stock, the bill alleged with sufficient definiteness the C. Company's title to the stock and the manner of its acquisition.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 814–817; Dec. Dig. § 211.*]

4. CORPORATIONS (§ 207½,* New, Vol. 10, Key No. Series)—STOCKHOLDER'S BILL—ISSUANCE OF STOCK—RESCISSION.

Where a stockholder's bill alleged an unlawful issue and transfer of the corporation's common stock carrying with it the control of the corporation, and sought to compel a cancellation of such issue, as in violation of the statute and of the trust obligation due from the corporation's directors to complainant and other stockholders by reason of which the corporation's credit and dividend-paying capacity was endangered and irreparably injured and damage threatened, the bill was not demurrable because complainant had a clear adequate remedy at law, in a suit for the benefit of the corporation, to recover the balance of the par value of the stock so transferred which was unpaid.

5. COURTS (§ 299*)—FEDERAL COURTS—JURISDICTION—CITIZENSHIP.

Where a stockholder's bill to set aside an issue and transfer of the corporation's common stock was filed by complainant, a citizen of Indiana, in the Circuit Court for the Northern District of West Virginia, and all the necessary parties defendant were alleged to be citizens of West Virginia and of such district, except the defendant C. Company, which was alleged to be a citizen of New Jersey, but as to which jurisdiction was alleged to attach by reason of the fact that the property involved was situated in the Northern District of West Virginia, and that a cloud on

the title thereof was sought to be removed as authorized by Act Cong. March 3, 1875, c. 137, § 8, 18 Stat. 472 (U. S. Comp. St. 1901, p. 513), the bill was not demurrable for failure to show sufficient jurisdictional facts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 841; Dec. Dig. § 299.*]

6. COURTS (§ 307*)—FEDERAL COURTS—JURISDICTION.

Where federal jurisdiction in a suit by a stockholder was sustainable on the theory that it involved a controversy between citizens of different states, the bill was not demurrable because the controversy was not one arising under the Constitution or laws of the United States.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 307.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullaghan, 27 C. C. A. 298.]

7. COURTS (§ 317*)—FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—STOCKHOLDER'S BILL—ARRANGEMENT OF PARTIES—CITIZENSHIP OF CORPORATION.

The fact that the ultimate interest of a corporate defendant in a stockholder's suit to set aside an issue and transfer of the corporation's common stock is the same as that of the complaining stockholders does not require, in arranging the parties to the cause to determine federal jurisdiction, invoked on the ground of the diversity of citizenship, that the corporation be grouped on the side of the complainant, where the bill alleges that the corporation is under a control antagonistic to complainant and is made to act in a manner detrimental to complainant's rights.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 317.*]

8. EQUITY (§ 148*)—BILL—"MULTIFARIOUSNESS."

A stockholder's bill to compel the cancellation of an alleged illegal issue of the corporation's common stock and the rescission of a transfer thereof and for a receiver to conduct the corporation's affairs for a reasonable time and an injunction restraining the transferee of the stock from voting the same at stockholders' meetings was not demurrable for multifariousness, under the rule that whether a bill is "multifarious" is a question of discretion, and that the bill will not be so held where there are only separate claims to the same individual subject-matter.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 341–367; Dec. Dig. § 148.*

For other definitions, see Words and Phrases, vol. 5, pp. 4616–4618.]

9. CORPORATIONS (§ 211*)—STOCKHOLDER'S BILL — REQUISITES—EQUITY RULE 94—APPLICATION.

Equity Rule 94, providing that every stockholder's bill against the corporation and others, to enforce rights which may properly be asserted by the corporation, must particularly set forth complainant's efforts to secure such action as he desires on the part of the managing directors or trustees of the corporation, and if necessary of the stockholders and the causes of his failure to obtain such action, does not apply to a stockholder's bill to set aside an alleged illegal issue of the corporation's common stock and an alleged transfer thereof by the corporation's directors without the knowledge, consent, authority, vote, or acquiescence of the stockholders to defendant C. Company for a sole consideration of certain services, the value of which was not more than one-tenth of the par value of the stock; the directors and the control of the C. Company being alleged to be antagonistic to complainant.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 211.*]

10. CORPORATIONS (§ 99*)—STOCK—SALE — CANCELLATION—RIGHTS OF STOCKHOLDERS.

Code 1899 W. Va. c. 53, § 24 (Code 1906, § 2253), provides that corporate stock shall not be sold at less than par, except by a vote of three-fourths of all the stock of the corporation outstanding at the time the vote is taken, and not then until notice of the intention to present a res-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

olution or motion authorizing such sale at a stockholders' meeting shall have been first published, etc. *Held,* that since a West Virginia corporation, organized to own and operate telephone lines, had no general power to issue stock contrary to such provision, the issuance and sale of the corporation's common stock by its board of directors without the knowledge, consent, authority, vote, or acquiescence of its stockholders for less than par and for a sole consideration of certain services, which were of a value not to exceed one-tenth of the par value of the stock, was invalid and subject to vacation at the suit of a stockholder for the benefit of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

In Equity. Bill by Andrew J. Howard against the National Telephone Company and others. On demurrer to bill. Overruled.

Howard, a citizen of Indiana, has filed his bill herein against the National Telephone Company, a West Virginia corporation, the Continental Telephone & Telegraph Company, a New Jersey corporation, and 14 other telephone companies, corporations existing under the laws of West Virginia, Pennsylvania, and Ohio. He alleges himself to be the owner of 31 shares of the preferred capital stock of the National Telephone Company, of the par value of $100 each, or of the total value of $3,100; that the National Telephone Company was incorporated for the purpose, among others, of acquiring, by lease, purchase, or otherwise, and maintaining and operating, telephone and telegraph lines in West Virginia, Pennsylvania, and Ohio; that its authorized capital stock is $15,000,000, $5,000,000 preferred and $10,000,000 common; that it has issued $1,401,100 of preferred stock, and authorized a mortgage bond issue of $10,000,000, of which $2,625,000 have been issued, $1,031,000 of which were used in the acquisition of properties, and the remainder was pledged as collateral security for certain loans; that it has acquired and purchased the whole or a great majority of the stock of the 14 other telephone companies, other than the Continental one, named as defendants, which stock purchases were made subject to the mortgage bonds theretofore issued by these underlying companies fully set forth; that after these stock purchases the National Telephone Company elected new boards of directors and officers for these several companies and consolidated them under one management, with general offices at Wheeling, W. Va., and from then until now has maintained, operated, and controlled them and built up an extensive, economic, and profitable telephone business, the value of which is reasonably estimated at $8,500,000, charged, however, with the bonded indebtedness of $2,443,000; that in addition to this bonded indebtedness, in the conduct of its business and that of its underlying companies, the National Telephone Company has incurred various debts for moneys borrowed from banks, trust companies, and individuals fully set forth, aggregating $765,500, about to fall due, for which its bonds have been deposited as collateral security; and that interest on the outstanding bonds of the National Company has fallen due.

It is then charged that, after this National Company had so acquired its stock control of the underlying companies, had issued its bonds, and incurred the other indebtedness, and after it had issued and sold its preferred stock, its board of directors, without the knowledge, consent, authority, vote, or acquiescence of its stockholders, or of plaintiff, and in express violation of section 24 of chapter 53 of the Code of West Virginia, had issued the full amount of its common stock authorized by its charter, to wit, 100,000 shares of the par value of $10,000,000, and sold the same at less than par to the Consolidated Telephone & Telegraph Company, a West Virginia corporation, which in turn had assigned and delivered the same to the defendant the Continental Telephone & Telegraph Company, now holding and claiming the same. This issue and sale, it is charged, was not made by any vote of the stockholders, no money was received therefor; its sole consideration was services rendered which were of a value not more than one-tenth the par value of said stock.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bill further alleges that after this stock came into the hands of the Continental Company the affairs of this latter company, after suit brought in New Jersey for the appointment of a receiver for it, were so adjusted as that a voting trust of its stock was established, to control and manage its affairs for two years, by reason whereof two of the three trustees so constituting said voting trust are demanding that the treasurer of the National Company shall resign and one of their number be appointed in his stead, and are threatening to take entire charge and control of its affairs and of its underlying companies with a view to divert the income and profits of each from their legitimate uses and appropriate the same to the uses and purposes of the Continental Company, whereby plaintiff would be deprived of all prospect of dividend from his stock, and further accomplishing the ruin and bankruptcy of the National Company and its underlying companies. It is then, in effect, charged that, by reason of the transfer of its stock by its directors to the Continental Company and the demands of the two trustees of the latter to control its affairs, the credit of the National Company is being impaired, whereby it is unable to meet its obligations, and its ruin and that of its underlying companies is threatened by reason of suits likely to be instituted in the several different states and many different localities where its operations are conducted.

The bill further charges that plaintiff has not applied, either to the board of directors of the National Telephone Corporation or to its stockholders, for the relief against the illegal issue of 100,000 shares of its common stock now in the possession of and claimed by the Continental Telephone & Telegraph Company, because its said board of directors could not deliver the same up for cancellation, if it was so inclined, and that, as he is informed, it has no such inclination, and would refuse to take any step to bring about the cancellation of said stock, because the board that issued said stock is the present board of the company, and that it would be idle to apply to a stockholders' meeting of said company for the reason that the 100,000 shares themselves constitute a great majority of the voting power of the National Telephone Company, and the holder thereof, the Continental Telephone & Telegraph Company, could not be expected to vote said shares for their own destruction.

The further charges are made that the National and underlying companies are quasi public corporations, whereby they should, in the interest of the public, be kept as going concerns; that their gross annual income will amount to near $900,000, and their net income to near $200,000; and that the possession of this $10,000,000 of stock so illegally issued and now held by the Continental Company constitutes a cloud upon the title of the National Corporation to the personal property and stock of its underlying companies situate within the Northern district of West Virginia.

The prayer of the bill is that said issue of $10,000,000 of stock be delivered up by the Continental Company and be canceled; that receivers for the National and underlying companies be appointed to conduct the affairs thereof for a reasonable time, and for an injunction against the Continental Company restraining it, its officers and agents, from calling a meeting of stockholders of the National Company and from voting in any stockholders' meeting called the 100,000 shares of stock in controversy.

To this bill the Continental Company has interposed a demurrer, alleging 11 grounds therefor: First, because compliance with Equity Rule 94 is not shown. Second, the bill shows no interest in plaintiff entitling him to the relief prayed for. Third, lack of proper parties. Fourth, the bill is uncertain in stating the defendant's title to the $10,000,000 worth of stock and the manner and circumstances of its acquirement. Fifth, that on its face the bill shows the relief as to the stock cannot be granted, but that title to it is indefeasible in defendant the Continental Company. Sixth, the bill on its face shows plaintiff to have no legal capacity to bring the suit. Seventh, complete and adequate remedy at law. Eighth, lack of jurisdiction in this court in consequence of a want of necessary averments as to citizenship of parties. Ninth, because the bill does not show the action to be one arising under the Constitution or laws of the United States. Tenth, lack of diverse citizenship; the interest of the National Company, one of the defendants, being the same as that of the plaintiff. Eleventh, bill multifarious.

T. S. Riley and John H. Holt, for plaintiff.

John J. Coniff, for demurrant Continental Telephone & Telegraph Co.

DAYTON, District Judge (after stating the facts as above). A number of these grounds of demurrer can be quickly disposed of. The second, to the effect that plaintiff shows no interest entitling him to relief, must be overruled inasmuch as the bill alleges him to be the owner of 31 shares of preferred stock of the National Corporation, worth at par $3,100, which, with the other stock of the company, is threatened with destruction in value by reason of the Continental Company having gained illegal control of the National's property and affairs. Allegations to this effect, taken for true, as they must be on demurrer, would seem to me to show clear interest. The third, that necessary parties are not made to the bill, must be overruled because the bill does not disclose such lack of necessary parties. The fourth, to the effect that the bill does not definitely state the Continental Company's title to the $10,000,000 of stock and the manner of its acquisition, must be overruled because, in my judgment, the allegations of the bill are full and complete as to these matters. The sixth, that the said plaintiff has not the legal capacity to bring this suit, is manifestly based upon the two contentions set forth in the first and second grounds, as nothing in the bill discloses any personal legal disability, such as infancy or lunacy, so far as the plaintiff is concerned. The second ground of demurrer I have above disposed of; the first will be considered later on. The seventh ground, that "there is a plain, adequate, and complete remedy at law," in the nature of a suit to recover the balance of the par value of the stock unpaid, I do not consider as sound under the statement of facts set forth in this bill. As said in Laws v. Fleming, 177 Fed. 450:

"While it is true section 723, Rev. St. (U. S. Comp. St. 1901, p. 583), prohibits suits in equity in federal courts where a plain, adequate, and complete remedy at law can be had, it is also true that, construing this statute, the courts have held that the remedy at law must not only be plain and adequate, but it must also be complete, and if the remedy at law is doubtful, difficult, not adequate to the object, not so complete as in equity, nor so efficient and practicable to the ends of justice and its prompt administration, then equity will take jurisdiction"—citing Whitehead v. Shattuck, 138 U. S. 151, 11 Sup. Ct. 276, 34 L. Ed. 873; Spokane Mill Co. v. Post (C. C.) 50 Fed. 431; Smith v. Am. Nat. Bank, 89 Fed. 840, 32 C. C. A. 368.

And in Rumbarger v. Yokum, 174 Fed. 55:

"While it would be next to impossible to establish a certain fixed rule to define the dividing line between the two jurisdictions, it is safe to say, in connection with this case, that in cases seeking only a pecuniary judgment for a specific amount the remedy at law is adequate and complete. It is just as safe to say that, when the case requires the administration of a trust, the cancellation or release of liens, the removal of clouds upon title, and accounting— especially where fraud is charged, involving the consideration of fiduciary and trust relations—although the rendering of a pecuniary judgment may be one of the results sought, the remedy at law is neither adequate nor complete, and equity will assume jurisdiction"—citing Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183.

In this bill the plaintiff stockholder insists that his interest demands, and his lawful rights entitle him to, a cancellation of this issue of $10,000,000 of stock, not a ratification of its alleged illegal issue by the recovery at law of the unpaid balance of its par value. He charges, in effect, its issue to have been in violation of statutory law and of the trust obligations due from the directors to himself and other stockholders, by reason of which the company's credit and dividend-paying capacity is endangered and irreparable injury and damage threatened. And, by reason of the settled design and purpose of the Continental Company, by reason of its holding this illegal issue of stock, to assume management and control of the National Company's affairs, divert to its own use its revenues and property, thereby causing its ruin and bankruptcy and that of its underlying companies, he asks for receivers for the National and injunction against the Continental to stay it from carrying out its destructive purpose. 'Surely, under such allegations, it is clear that a suit at law to recover the unpaid par value of this alleged illegally issued stock would not be an adequate and complete remedy, efficient and practicable to the ends of justice and its prompt administration.

The eighth ground, to the effect that jurisdiction is not shown by proper averments as to citizenship of parties, must fail because the bill charges plaintiff to be a citizen of Indiana and all necessary parties defendant to be citizens of West Virginia and of this district, except the Continental Company, alleged to be a citizen of New Jersey, but as to which jurisdiction is alleged to attach by reason of the property involved being situate in this state and district, as to which a cloud upon title is sought to be removed under section 8 of the act of March 3, 1875 (18 Stat. 472, c. 137 [U. S. Comp. St. 1901, p. 513]).

The ninth ground is untenable because it is manifest this controversy is not one "arising under the Constitution or the laws of the United States," but "between citizens of different states."

The tenth ground is also untenable because the allegations of the bill fully set forth that the managing directors and officers of the National Company are antagonistic to plaintiff and are denying his alleged rights.

The fact that the ultimate interest of a corporate defendant may be the same as that of the complaining stockholders does not require, in arranging the parties to a cause, for the purpose of determining the jurisdiction of a federal Circuit Court, invoked on the ground of diversity of citizenship, that such corporation be grouped on the side of complainants, where the bill alleges that the corporation is under a control antagonistic to complainants, and is made to act in a way detrimental to their rights. Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606.

Nor do I believe the bill to be objectionable because of multifariousness, as set forth in the eleventh ground.

As said in Rumbarger v. Yokum, 174 Fed. 55:

"It is always to be remembered that the determination of whether a bill is multifarious or not is a question of sound discretion, dependent upon the facts of each case, and the very general ruling of the courts is that a bill

which involves the same indivisible subject-matter is not multifarious because of separate claims thereto"—citing United States v. Am. Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450; Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729; Brown v. Trust Co., 128 U S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; South Penn Oil Co. v. Calf Creek Oil & Gas Co. (C. C.) 140 Fed. 507; Arnold v. Arnold, 11 W. Va. 455; Shafer v. O'Brien, 31 W. Va. 601, 8 S. E. 298.

This brings us to a consideration of the first and fifth grounds for this demurrer, which, in argument, were most earnestly insisted upon and present questions of more difficult solution.

The first insists the bill must fail because on its face it admits that plaintiff has not attempted "to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders" of the National Company, as provided by Equity Rule 94. This rule is nothing but a statement in concrete form, of equity procedure, as administered by the High Court of Chancery of England for centuries and uniformly adopted by the equity courts of this country. As the "reason of the law is the life of the law," so the reason for the rule is the justification for its enforcement. It is not an arbitrary rule subject to no exception. To establish such an arbitrary rule would be abhorrent to equity, having its existence and exercising its powers largely on account of the necessary modification, under exceptional conditions, of the arbitrary rules of the law. As said by Mr. Justice McKenna, in the recent case of Delaware & H. Co. v. Albany & S. R. Co., 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862:

"The purpose of rule No. 94 hardly needs explanation. It is intended to secure federal courts from imposition upon their jurisdiction, and recognizes the right of the corporate directory to corporate control; in other words, to make the corporation paramount, even when its rights are to be protected or sought through litigation. Cases in this court have indicated such right. But the directory may be derelict and the interest of stockholders put in peril, and a case hence arises in which the right of protecting the corporation accrues to them. Rule 94 expresses primarily the conditions which must precede the exercise of such right, but emergencies may arise in which the antagonism between the directory and the corporate interest may be unmistakable, and the requirements of the rule may be dispensed with; or, it is more accurate to say, do not apply."

And in Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606, it is said:

"The ninety-fourth rule in equity contemplates that there may be, and provides for, a suit brought by a stockholder in a corporation, founded on rights which may properly be asserted by the corporation. And the decisions of this court establish that such a suit, when between citizens of different states, involves a controversy cognizable in a Circuit Court of the United States. The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff; but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights. In other words, his interests and the interests of the corporation may be made subservient to some illegal purpose. If a controversy hence arise, and the other conditions of jurisdiction exist, it can be litigated in a federal court."

And the decision of the court below in this case dismissing the stockholder's bill was reversed because the defendant corporations

were alleged to be under the control of the Harringtons, antagonistic to them and deterimental to their rights.

These two decisions and others of the Supreme Court cited in them by the court and by counsel in argument, as well as those in Young v. Alhambra Mining Co., 71 Fed. (C. C.) 810; County of Tazewell v. Farmers' Loan & Trust Co., 12 Fed. (C. C.) 752; Ranger v. Champion Cotton-Press Co. (C. C.) 52 Fed. 611; and Excelsior Pepple Phosphate Co. v. Brown, 74 Fed. 321, 20 C. C. A. 428, this last by the Circuit Court of Appeals for this circuit—have fully convinced me that an exceptional case is here alleged where rule 94 does not apply, and this ground of demurrer must be overruled.

Finally, it is insisted by the fifth ground of demurrer that the title of the Continental Company to the $10,000,000 of stock, as shown by the allegations of the bill, is indefeasible and cannot be canceled. In support of this contention, counsel insist upon two propositions: First, the negotiable character of stock when assigned; and, second, that stock, which a corporation has general power to issue, but not in a manner in which, or upon the terms upon which, it was in fact issued, is merely irregular and voidable.

In support of the first proposition are cited the cases of Lipscomb's Adm'r v. Condon, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938; Bank v. Belington, C. & C. Co., 51 W. Va. 78, 41 S. E. 390; Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468, 35 L. Ed. 88; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Martin v. South Salem Land Co., 94 Va. 28, 26 S. E. 591.

These cases do not seem to me to be applicable here. In the Lipscomb Case the gist of the ruling is that stock can be assigned other than by assignment of the certificate of stock and transfer upon the books of the corporation, and that when so assigned, without fraud, it is not subject to attachment or execution subsequently issued against the assignor. In Bank v. Coal & Coke Co. it was held that, under the special exception contained in section 24, c. 53, Code W. Va. (section 2253, Code 1906), mining companies might issue stock at par in payment of property for their corporate uses at an overvaluation for such property; the price thereof being agreed upon by the owners and directors. Without discussing the facts involved, it is sufficient to say the cases of Clark v. Bever, Fogg v. Blair, and Handley v. Stutz, were decisions under the laws of Iowa, Missouri, and Kentucky, respectively, where no such statutory provisions as those contained in section 24, c. 53, of the Code of this state exist.

In support of the second proposition, the cases of Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227, Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818, and Upton v. Tribilock, 91 U. S. 45, 23 L. Ed. 203, are cited.

These cases do not apply to the facts here. Their general scope involves the right of creditors to recover against stockholders the unpaid balances on stock issued to them below par, by their participation and with the understanding that it should not be further assessed. But, aside from this, it seems to me that there can be said to be no

general power in a corporation to issue stock contrary to express statutory provisions of the state giving it life. It assumes its life and maintains its existence under and in obedience to such laws. I cannot assume any "general" or "special" power other than so guaranteed and vested in it by such laws.

The demurrer to the bill will be overruled.